**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SIDNEY E. SMITH III, et al., executors | ) | |
| of the Estate of Sidney E. Smith, Jr., | ) | |
| **Plaintiffs** | ) | **C.A. No. 02-264 ERIE** |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| UNITED STATES OF AMERICA, | ) | |
| **Defendant** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Plaintiffs' motion for partial summary judgment

[Document # 54] be denied and Defendant's cross-motion for partial summary judgment

[Document # 61] be granted.

**II.      REPORT**

      **A.      Relevant Procedural and Factual History**

This action was commenced by Sidney E. Smith, Jr. ("Mr. Smith") on September 5,

2002, to recover  tax and interest that was assessed and collected by the Internal Revenue

Service on gifts he made in 1998.  During the pendency of this litigation, Mr. Smith died on

April 22, 2003.  As a result, Mr. Smith's children, Sidney E. Smith, III, and Jill P. Smith

("Plaintiffs") were appointed Executors of Mr. Smith's estate on April 25, 2003, and were

substituted as Plaintiffs in this matter on or about May 27, 2003. (See Document # 14).

The gifts in question in this case were fractional interests in a family limited partnership

that was formed by the late Mr. Smith and the Plaintiffs on December 29, 1997, in accordance

with the Pennsylvania Uniform Limited Partnership Act, 15 Pa.C.S.A. § 8501 et seq. ("Smith

FLP").  The sole asset of the Smith FLP was 100% of the common stock of an operating

company known as Erie Navigation Company, Inc. ("ENC"), which, until then, had been owned

by Mr. Smith.  When it was formed, the Smith FLP had two general partners:  Mr. Smith, who

owned a 2% general partner interest, and Plaintiff Sidney E. Smith, III, who owned a 1% general

partner interest.  In addition, Mr. Smith owned a 95.15 % limited partner interest, while Plaintiff

Sidney E. Smith, III, owned a 0.90 % limited partner interest, and Plaintiff Jill P. Smith owned a

0.95 % limited partner interest.

On January 5, 1998, Mr. Smith gave each Plaintiff a 6.865 % limited partner interest in

the Smith FLP, and on December 31, 1998, each Plaintiff received an additional gift of a

13.37 % limited partner interest in the Smith FLP.  On or about February 1999,  Mr. Smith filed

a Form 709, 1998 United States Gift Tax Return, on which he reported that the total value of the

limited partner interests he gifted to the Plaintiffs in 1998 was $ 1,025,392.00. (See Complaint

at ¶ 7 and Exhibit A).  Based on this value, Mr. Smith paid gift tax in the amount of

$ 262,243.00. (See Complaint at ¶ 5).

On or about December 4, 2001, Defendant issued Mr. Smith an Assessment in which it

increased the total value of the gifts reported on Mr. Smith's 1998 Gift Tax Return to

$1,828,598.00. (See Complaint at ¶ 7 and Exhibits C and D).  As a result, Mr. Smith was

assessed additional gift tax totaling $360,803.00, which he paid to the Internal Revenue Service

on or about December 26, 2001. (See Complaint at ¶ 7 and Exhibits B and C).  With his

payment of the additional gift tax, Mr. Smith filed a Form 843, Claim for Refund and Request

for Abatement, claiming that he was wrongfully assessed and requesting a refund of the

additional gift tax. (See Complaint at ¶ 11 and Exhibit E).  After six months passed without

receiving a response to his refund request from Defendant, Mr. Smith filed the instant refund

suit pursuant to 26 U.S.C. § 6532. (See Complaint at ¶ 12).

Both parties agree that the sole issue in this case is the correct valuation of the limited

partner interests that were gifted to the Plaintiffs in 1998.  Both parties also agree that the value

of a limited partnership interest in the Smith FLP is subject to a significant marketability

discount due to a provision contained in the Smith FLP partnership agreement that limits the

price and the terms upon which the partnership would be required to pay a partner for his or her

limited interest(s) in the partnership if the partnership exercised its right of first refusal.  This

provision is set forth in Article VII, § 7.5(E) of the partnership agreement, in pertinent part, as follows:

> E.    The total Purchase Price to be paid by a purchaser for any Interest as determined pursuant to this § 7.5 shall be paid as follows:
>
> i.    In the event of any transfer pursuant to §§ 7.3 or 7.4 hereof, the Purchase Price shall be represented by non-negotiable promissory notes of the Partnership and/or purchasing Partners, as the case may be, payable over a period of time not to exceed fifteen (15) years (with the length of payment period to be selected by the purchaser), in equal annual installments of principal and interest, the first of which shall be due and payable one (1) year after the Closing Date.
>
> ii.    Interest shall accrue on, and be payable with, the unpaid balance of said notes from the Closing Date at a rate equal to the applicable federal rate for long-term debt instruments under Code § 1274(d)(1). .....

(See Document #25, Exhibit 1 at pp. 21-22).

The appraisal report prepared by Mr. Smith's valuation expert and attached to Mr. Smith's 1998 Gift Tax Return took this provision into account and discounted the value of the gifted limited partner interests accordingly.  This discounted value was, thus, reflected on Mr. Smith's Gift Tax Return. (See Complaint, Exhibit A).  In its Assessment, however, Defendant disregarded the above provision in arriving at the fair market value of the gifted interests, thus effectively disallowing the attendant marketability discount.  Defendant did so through its application of 26 U.S.C. § 2703(a) ("Section 2703(a)"), which generally provides that, for purposes of calculating estate, gift, and generation-skipping taxes, the fair market value of property is to be determined without regard to: (i) any option, agreement, or other right to acquire or use the property at a price less than its fair market value; or (ii) any restriction on the right to sell or use such property.  Plaintiffs disputed the applicability of Section 2703(a).

Thus, as a threshold matter, Defendant filed a partial motion for summary judgment [Document #20] seeking this Court's determination that Section 2703(a) applied to this case and required that the value of Plaintiffs' gifted limited partner interests be determined without regard to the restrictive provision set forth in Article VII, Section 7.5(E) of the Smith FLP agreement. Plaintiffs filed a brief in opposition to Defendants' motion [Document #23] arguing that Section 2703(a) did not apply to restrictive provisions contained in "entity-creating partnership

3

agreements," but pertained solely to independent buy-sell agreements. Alternatively, Plaintiffs argued that, even if Section 2703(a) was found to apply, the restrictive provision set forth in Article VII, Section 7.5(E) of the Smith FLP agreement fell within the "safe harbor" exception found in 26 U.S.C. § 2703(b) ("Section 2703(b)") and could, thus, be taken into account in determining the value of the gifted limited partner interests. Section 2703(b) provides as follows:

> (b) Exceptions. – Subsection (a) shall not apply to any option, agreement, right, or restriction which meets **each** of the following requirements:
> (1) It is a bona fide business arrangement.
> (2) It is not a device to transfer such property to members of the decedent's family for less than full and adequate consideration in money or money's worth.
> (3) Its terms are comparable to similar arrangements entered into by persons in an arms' length transaction.

26 U.S.C. § 2703(b)(emphasis added).

On July 1, 2004, this Court issued a Report and Recommendation [Document # 34] recommending that: (i) partial summary judgment be granted in favor of Defendant as to the issue of whether Section 2703(a) applied to the Smith FLP agreement's restrictive provision; (ii) partial summary judgment be granted in favor of Plaintiffs with regard to the issue of whether the restrictive provision satisfied the first safe harbor requirement set forth in Section 2703(b)(1); and (iii) partial summary judgment be denied with regard to the issue of whether the restrictive provision satisfied the safe harbor requirements set forth in Section 2703(b)(2) and (3). The latter recommendation was based upon this Court's determination that genuine issues of material fact existed as to whether Plaintiff can satisfy the last two safe harbor requirements of Section 2703(b). By Memorandum Order dated July 23, 2004, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation in its entirety. [Document # 36].

After conducting additional discovery, the parties have now re-filed cross-motions for partial summary judgment regarding the issue of whether the Smith FLP agreement's restrictive provision satisfies the safe harbor requirements set forth in Section 2703(b)(2) and (3). [Document ## 54 and 61].

4

**B.      Standard of Review**

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), *quoting* Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court

must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### C.    Discussion

At the outset, it must be noted that none of the arguments or evidence submitted by the parties has persuaded this Court to change the result of its previous Report and Recommendation. In fact, the parties' divergent interpretations of the evidence of record only serve to amplify this Court's opinion that genuine issues of material fact exist as to Plaintiff's ability to satisfy the safe harbor requirements of Section 2703(b)(2) and (3). It is not necessary, however, to detail the reasons for this conclusion because a threshold issue exists that neither party has addressed, the resolution of which proves to be dispositive of the ultimate issue of whether the Smith FLP agreement's restrictive provision controls value for Federal gift tax purposes.[1]

Before the enactment of Section 2703 in 1990, restrictive agreements were required to meet certain requirements set forth in section 20.2031-2(h), Estate Tax Regs., and Rev. Rul. 59-60, 1959-1 C.B. 237, which requirements were summarized in Estate of Lauder v. Commissioner, T.C. Memo. 1992-736, as follows:

> It is axiomatic that the offering price must be fixed and determinable under the agreement. In addition, **the agreement must be binding on**

---

[1] In its previous Report and Recommendation, this Court confined its analysis to the sole issue that was raised by the parties; namely, the application of Section 2703 to the restrictive provision contained in the Smith FLP agreement. Now that the parties have asked this Court to take a second look at this issue, additional research has uncovered a threshold issue that was not previously examined by this Court or addressed by the parties: whether the restrictive provision meets the requirements of pre-section 2703 law, which remain in effect. Because the resolution of this issue is dispositive, there is no need to discuss further the application of Section 2703.

**the parties both during life and after death.**  Finally, the restrictive agreement must have been entered into for a bona fide business reason and must not be a substitute for a testamentary disposition.

(Citations omitted)(emphasis added).  See also St. Louis County Bank v. United States, 674 F.2d 1207, 1210 (8th Cir. 1982).  Restrictive agreements that failed to meet these requirements were disregarded in determining value for Federal estate and gift tax purposes.  Estate of Weil v. Commissioner, 22 T.C. 1267, 1274, 1954 WL 31 (1954).

Section 2703 expanded upon existing regulations by providing that any agreement to acquire property at less than its fair market value will be disregarded in valuing such property for Federal estate and gift tax purposes unless the agreement satisfies certain requirements enumerated in the statute.  Those requirements include the requirements of pre-existing law that the agreement be a bona fide business arrangement and not a testamentary device as well as a new requirement that the terms of the agreement be comparable to those of similar arrangements negotiated at arm's length.  26 U.S.C. § 2703(b).  However, "[a]s the legislative history makes clear, Section 2703 was intended to supplement, not supplant, the existing legal requirements: '[t]he bill does not otherwise alter the requirements for giving weight to a buy-sell agreement.  For example, it leaves intact present law rules requiring that an agreement have lifetime restrictions in order to be binding on death.'" Estate of Blount v. Commissioner, T.C. Memo. 2004-116, 2004 WL 1059517 at *1 (U.S. Tax Ct.), quoting 136 Cong. Rec. S15683 (daily ed. Oct. 18, 1990).  "Thus, regardless of whether section 2703 applies to a buy-sell agreement, the agreement must meet the requirements of the pre-section-2703 law to control value for Federal estate tax purposes." Estate of Blount, supra.[2]

Consequently, "before turning to the questions of whether section 2703 applies to the [Smith FLP agreement's restrictive provision] and whether the [provision] is disregarded

---

[2]

Although the U.S. Tax Court discusses the impact of pre-section 2703 law on a restrictive agreement's ability to control value for Federal estate tax purposes, the same analysis holds true for Federal gift tax purposes.  See Harris v. C.I.R., 340 U.S. 106, 107 (1950)("The federal estate and federal gift tax ... are construed *in pari materia*, since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the transferor's estate during his lifetime").

thereunder, we first consider whether the [restrictive provision] satisfies the requirements of pre-section-2703 law that a [restrictive] agreement, to be respected for Federal estate tax value, must be binding" on the parties to the agreement both during life and after death. Estate of Blount at *6 (citations omitted).  In this context, it has been held that the unilateral authority of the transferor to alter the terms of a restrictive agreement during his lifetime renders the agreement non-binding.  Under such circumstances, the restrictive agreement is to be disregarded for purposes of determining value for Federal estate and gift tax purposes.  See Estate of Blount at *8; Bommer Revocable Trust v. Commissioner, T.C. Memo. 1997-380.

In Bommer, the buy-sell agreement at issue contained a valid restriction on lifetime transfers of stock.  However, the agreement provided further that it may be amended or altered by the written consent of the holders of at least seventy-five percent (75%) of the issued and outstanding shares of the corporation.  On the date of the agreement and at all times thereafter, the decedent/transferor owned over 75 percent of the corporation's outstanding stock   As a result, the Tax Court concluded that the decedent had the unilateral ability to amend the agreement during his lifetime and, thus, the agreement was disregarded for purposes of determining the stock's value for Federal estate tax purposes.[3]  See also Estate of Blount (restrictive agreement disregarded for purposes of determining value of stock for Federal estate tax purposes because decedent had unilateral ability to modify agreement during his lifetime).

Here, at the time the Smith FLP agreement was executed, Mr. Smith owned a 2 % general partnership interest and a 95.15 % limited partnership; Plaintiff Sidney E. Smith, III, owned a 1% general partnership interest and a .90% limited partnership interest; and Plaintiff Jill P. Smith owned a .95% limited partnership interest. (See Smith FLP agreement attached as Exhibit A to Document # 22, Declaration of Ivan C. Dale, at Schedule A).  As of December 31, 1998, the date the last partnership interests were transferred, Mr. Smith owned a 2% general

---

[3]

It is significant to note that it makes no difference whether the decedent/transferor ever exercised his ability to alter the agreement during his lifetime, only that he had the unilateral right to do so.

partnership interest and 53.960% limited partnership interest; Sidney E. Smith, III, owned a 1% general partnership interest and a 21.495% limited partnership interest; and Jill P. Smith owned a 21.545% limited partnership interest. (See Smith FLP agreement at Schedule A-3.

The Smith FLP agreement provides that "[t]he General Partner or General Partners shall make all decisions and otherwise act by the majority vote of the total general partnership interests..." (See Smith FLP Agreement at p. 4). At all times prior to his death, Mr. Smith owned two-thirds of all general partnership interests and, thus, was able to unilaterally make all General Partner decisions under the Smith FLP agreement. Section 4.2 of the Smith FLP agreement provides that neither General Partner shall have any authority, "without the Consent of the Limited Partners (as defined in Section 1.5)," to, among other things, "amend or modify this Agreement." (See Smith FLP Agreement at p. 9). Section 1.5 of the agreement defines "Consent of the Limited Partners" as "the prior written consent or approval of Limited Partners owning at least one-half (1/2) of the Interests in the Partnership owned by Limited Partners...). (See Smith FLP agreement at p. 4). At all times prior to his death, Mr. Smith owned more than one-half of the limited partnership interests and the other limited partners owned less than one-half of all limited partnership interests, thus enabling Mr. Smith to unilaterally give the "Consent of the Limited Partners," as defined by the agreement.

Read together, the foregoing provisions demonstrate that Mr. Smith retained the unilateral ability to amend or modify the Smith FLP agreement, including the terms of the restrictive provision at issue in this case. As a result, the agreement, and the terms of the restrictive provision, were not binding on Mr. Smith during his lifetime and should be disregarded when determining value for Federal gift tax purposes.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for partial summary judgment [Document # 54] be denied and Defendant's cross-motion for partial summary judgment [Document # 61] be granted.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and

9

Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                        S/Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        Chief U.S. Magistrate Judge

Dated: July 22, 2005

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

        all parties of record (lw)