IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIDNEY E. SMITH III and ) | |
| JILL P. SMITH, Executors of the Estate of ) | |
| SIDNEY E. SMITH, JR., deceased, ) | |
|     Plaintiffs ) | |
| ) | |
|     v. ) | CIVIL ACTION NO. 02-264 ERIE |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|     Defendant ) | ELECTRONICALLY FILED |

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**
<u>**OF THE MAGISTRATE JUDGE**</u>

On July 22, 2005, Magistrate Judge Susan Baxter recommended that this District Court deny Summary Judgment to the plaintiffs and grant the government's cross motion for summary judgment. Plaintiff hereby sets forth its objections to the Magistrate's recommendations.

<u>**CONCISE STATEMENT OF OBJECTIONS**</u>.

This is an action to claim a refund for excess taxes assessed and paid resulting from inter-vivos gifts of interest in a family limited partnership made by the plaintiff to his children in 1997. The most recent Report and Recommendation of the Magistrate Judge finds that a previously unconsidered provision of the Internal Revenue Code, 26 C.F.R. §20.2031-2, (hereinafter §2031-2) is applicable to this case, pre-empting the need to even continue the analysis of 26 C.F.R. 25.2703-1, (hereinafter §2703-1) on which the case had been previously focused.  Upon this

basis, a number of conclusions are reached in support of a Recommendation to which the plaintiff objects.[1]

1.      The Report and Recommendation characterizes the Smith Family Limited Partnership Agreement ("the Agreement") as one that "limits the price and the terms upon which the partnership would be required to pay a partner for his or her limited interest(s) in the partnership if the partnership exercised its right of first refusal." R&R, 7/22/05, p. 2.[2]  As a result of this analysis, the Report and Recommendation subjects the Agreement to the requirements set forth in section 20.2031-2(h).  For reasons set out below, plaintiff respectfully objects both to the conclusion that this partnership agreement is one that "limits the price" of partnership shares, and to the recommendation that the Agreement is subject to the requirements set forth in 20.2031-2(h).

2.      Following upon this interpretation of the agreement, the Report and Recommendation proceeds to analyze the Agreement under the framework of 2031-2(h), specifically finding that Mr. Smith held a controlling interest in the partnership until his death, and could alter its terms at his will.  This controlling interest, it is reported, means that the Agreement was not "binding on the parties both during life and after death."  Plaintiff respectfully objects to the conclusion that Mr. Smith's interest in the partnership is relevant to this analysis.

---

[1] The unusual nature of this ruling, incorporating a portion of the regulations not previously considered, forces the plaintiff to comment only upon the Magistrate Judge's application of this portion of the regulations.  Yet, plaintiff maintains objections not only to the recommendation that summary judgment be granted in favor of the government, but objects to the recommendation to deny summary judgment to plaintiff.  Since the Report and Recommendation does not specifically address the substance of plaintiff's arguments with regard to the applicability of §2703(b), plaintiff incorporates by reference its Motion and Brief as the rationale for its objection to the Recommendation to deny plaintiff's Motion.

[2] As will be discussed in greater detail, the Report and Recommendation incorrectly includes this conclusory statement as one of undisputed fact between the parties.  "Both parties have agreed that the valuation of a limited partnership interest is subject to a significant marketability discount that limits the price and the terms upon which the partnership would be required to pay a partner for his or her limited interests in the partnership if the partnership exercised its right of first refusal." (R&R, 7/22/05, p. 2) There has been no such agreement.  In fact, the lack of a price fixing mechanism in the Agreement is key to plaintiff's objections both to the first R&R and the present one.

3. Under analysis driven by 2031-2(h), it is recommended that the terms for the purchase of partnership shares contained in the Agreement should be disregarded when determining value for Federal gift tax purposes. For reasons set out more fully below, plaintiff respectfully objects to this recommendation on the ground that the issue considered by the Magistrate Judge is not dispositive in this case.

**DISCUSSION**

In general, the Report and Recommendation misconstrues the partnership agreement at issue, misinterprets the Internal Revenue Code, and recommends a position that runs contrary to every authority cited in the Report. The Recommendation dramatically broadens the reach of §2031-1(h) of the I.R.S. code, substantially increasing the tax liability for a whole class of inter-vivos gifts that have been proferred for legitimate business purposes. It does so without a scintilla of evidence that this result was ever desired by law-makers or intended by the courts interpreting the law.

    A.    **§2031-2(h) Does Not Apply to the Subject Partnership Agreement.**

"The effect, if any, that is given to the option or contract *price* in determining the value of the securities for estate tax purposes depends upon the circumstances of the particular case. Little weight will be accorded a *price* contained in an option or contract under which the decedent is free to dispose of the underlying securities at any price he chooses during his lifetime." §2031-2(h) The plain language of the regulation establishes the existence of a contractually fixed price as the trip-wire for the §2031-2(h) analysis. The Internal Revenue Service has, itself, supported this interpretation of the regulation.

> Frequently, in the valuation of closely held stock for estate and gift tax purposes, it will be found that the stock is subject to an agreement restricting its sale or transfer. Where shares of stock were acquired by a decedent subject to an option reserved by the issuing corporation to repurchase *for a price,* the *option price* is usually accepted as the fair market value for estate tax purposes. However, in such case the option price is not determinative of fair market value for gift tax purposes. (emphasis added.)

Rev. Rul. 59-60.§8. Further, this interpretation of the regulation is supported by all of the cases cited in the Report and Recommendation. *Estate of Lauder,* T.C. Memo 1992-736;; *Estate of Blount v. Commissioner*, T.C. Memo 2004-116; *Estate of Weil v. Commissioner*, 22 T.C. 1267; *St. Louis County Bank v. United States*, 674 F.2d 1207, 1210 (8th Cir. 1982); *Estate of Bommer Revocable Trust*, T.C. Memo 1997-380.

In *Estate of Lauder,* the Tax Court begins its analysis by saying "the issue for decision is whether the *formula price* contained in the restrictive shareholder agreement, to which decedent was a party, controls the valuation of stock in a closely held corporation for purposes of federal estate tax." (emphasis added.) *Estate of Lauder,* *18. The court went on to say: "The courts . . . have long recognized that the value of corporate stock may be limited for Federal estate tax purposes by an enforceable buy-sell agreement or option contract which *fixes the price* at which the stock may be offered for sale to the remaining shareholders." (emphasis added.) *Estate of Lauder,* *18. The tax court then lays out several requirements for testing whether a "formula price" set forth in restrictive agreements is binding. *Estate of Lauder,* *20. Clearly, buy-sell agreements that fix a price by number or formula trigger the analysis required by §2031-2(h) to determine whether such price is to be considered in the valuation. There is no indication that the regulation was seen as having a broader scope, and in particular, stretching to agreements that specify valuation at fair market value.

4

In *Estate of Blount* the court affirms precisely this position, in commenting upon the applicability of §2703.[3] "If Mr. Grizzle were correct regarding the fair market value of decedent's BCC shares, section 2703(a) would not be triggered, *insofar as it applies only to those agreements that set a price below fair market value.*"(emphasis added.) *Estate of Blount*, *22. The comment, though arguably dicta, unequivocally expresses the view of the tax court that estate freeze concerns addressed by §2703-2(a), (and by extension its predecessor §2031-1(h) ), are focused upon price-fixing. The Smith Family Limited Partnership Agreement does not fix the price, but rather specifies the price to be whatever is considered fair market value.

In *Estate of Weil*, the court framed the issue in the following manner. "We are asked to decide whether the value of decedent's interest in the partnership for purposes of computing the gross estate is limited to the amount provided for and paid under the partnership and purchase agreements." *Estate of Weil,* 22 T.C. 1267. The court did not make any comments that would extend the applicability of the regulation to non-price-fixing provisions. As a result, this decision does not provide any foundation for extending the interpretation of §2031-1(h) beyond those that express the price to be paid for partnership shares.

In *St. Louis County Bank*, the court was, in fact, considering a partnership agreement containing a formula for valuation that set the value of the stock at $0. *St. Louis County Bank¸* 674 F.2d at 1210. It is significant that the Eight Circuit first said: "We have no problem with the District Court's findings that the stock-purchase agreement provided for a reasonable price at the time of its adoption, and that the agreement had a bona-fide business purpose - the maintenance of family ownership and control of the business." *St. Louis County Bank,* 674 F.2d at 1210. The

---

[3] The analysis of the applicability of §2703 is applicable to §2031, particularly in *Estate of Blount*, because the Tax Court characterized §2031 and §2703 as seamless, intended to be applied in jointly in the analysis of valuation. See *Estate of Blount*, T.C. Memo 2004-116.

5

court went on to cite two issues decided by the district court that, as a matter of law, it could not affirm. First, the court stated: "We are . . . bothered by the fact that decedent's stock was valued by his estate for estate-tax purposes at $0." *St. Louis County Bank,* 674 F.2d at 1210. The second issue was that the provisions of the agreement were not followed upon the death of the decedent.

The methodology of the court's analysis in *St. Louis*, supports the rationality of ruling that the present Agreement was never intended to be subjected to the analysis of §2031-1(h). Like *St. Louis,* the present Agreement has been held to have a bona fide business purpose of maintaining family control of the business. (Order, July 23, 2004; Report and Recommendation, June 30, 2004.) Unlike *St. Louis*, the Agreement did not set a price for partnership shares. Also, the present Agreement is distinguished from the agreement in *St. Louis* because the provisions of the Agreement have not been ignored at any time. In fact, based upon the Eighth Circuit's analysis, the present Agreement does not provide any indicia of being an estate freeze device subject to the analysis of §2031-1(h).[4] In essence, there is every reason to believe that the present Agreement would have been upheld under the methodology of the Eight Circuit.

Finally, *Estate of Bommer*, similar to all of the above cases, focused upon an agreement that fixed a price per share. Further, the declared price per share never had been subjected to periodic reevaluation, *Estate of Bommer*, *16, and even the taxpayer's expert had determined that the fixed price was less than "adequate and full consideration." *Estate of Bommer*, *24. Under such circumstances it is not surprising to see the tax court engage in the analysis of §2031-1(h) to determine whether or not, as stated in the regulation, "little weight will be accorded [this] price

---

[4] Given that legislative history explicitly referenced *St. Louis County Bank* as being a model for the formulation of §2703(a), it is also quite reasonable to conclude that the Agreement also would not be subjected to the estate freeze analysis of §2703(a). See 136 Cong. Rec. S15629-04.

6

contained in the [agreement]." As stated above, the present Agreement is distinguished from the agreement reviewed in *Estate of Bommer* because it does not fix a price.

It bears repeating that the cases and regulations cited above constitute the complete legal basis for the recommendation now sitting before this Court. To adopt this recommendation, it will therefore be necessary for this court to ignore the plain meaning of the regulations and interpret the I.R.S. code in a manner that goes far beyond the holding of any court cited as authority for this recommendation. §2031-2(a) sets the context for §2031-2(h) by stating that the "value of stocks and bonds is the fair market value per share or bond on the applicable valuation date." It is important to be aware that the adoption of this Recommendation may potentially declare, in essence, that all family limited partnerships must be subjected to the anlaysis of §2031-2(h) (and 2703-1(a)) <u>even</u> <u>when</u> the agreement explicitly states that the price for partnership shares shall be the fair market value. Such a holding would, indeed, have broad implications that extend far beyond the present case.[5]

**B.    §2031-2(h) ANALYSIS IS INAPPROPRIATE WHERE THE QUESTION OF VALUATION IS FOCUSED SOLELY ON INTERESTS IN A PARTNERSHIP.**

The basis for valuation of interests in a partnership is 26 C.F.R.§2031-3.("§2031-3.") There it states that valuation is to be based upon the net amount a willing purchaser would pay a willing seller. This amount is, in turn, determined from "all relevant factors" including: (1) a fair appraisal of all the assets of the business; (2) the demonstrated earning capacity of the

---

[5] Even if one takes into account discussions of §2703, neither the earlier Report and Recommendation nor the government's brief offers any legal foundation for this extreme position. Recall that the first Recommendation adopted the government's characterization of this argument as one of first impression.

business; (3) and "other factors set forth in paragraphs (f) and (h) of §2031-2 *relating to the valuation of corporate stock, to the extent applicable*." §2031-3.

In shifting the basis of analysis for the present case from §2703-1(a) and (b) to §2031-2(h), the Report and Recommendation looses grip of an essential foundation of this case. This case is focused solely upon the valuation of interest in a family limited partnership, which is grounded in analysis provided by §2031-3. The Magistrate Judge is now recommending that the court change its direction entirely, and evaluate the worth of the entire interest in the partnership as if it were corporate stock. See §2031-2(a).[6] While the distinction appears to be semantically subtle, it in fact is a dramatic and inappropriate shift in analysis.

§2031-2(h), to the extent that it is relevant at all, would be applied only to the valuation of shares of corporate stock held by the partnership, not the partnership itself. A look at all of the cases cited in the Report and Recommendation supports this distinction. Therefore, as a matter of law, §2031-2(h) is not a legitimate basis on which the efficacy of the partnership agreement provisions in question can be judged.[7] As a result, with regard to the valuation of interests in the partnership, the degree of control plaintiff had over the terms of the agreement are irrelevant to the present valuation analysis.

C.   §2031-2(h) ANALYSIS IS TRIGGERED BY THE DEATH OF THE PARTY AND IS INAPPROPRIATELY APPLIED IN THE PRESENT CASE.

Finally, to the extent that §2031-2(h) is relevant to note that §2031-2(h) has a more narrow application than suggested in the Report and Recommendation. This provision is,

---

[6] §2031-2 begins by stating: "In general. The value of stocks and bonds is the fair market value per share or bond on the applicable valuation date." §2031-2(a).
[7] It is also important to note that §2031-3, rather than §2031-2, is the point of reference for deciding whether §2703 analysis is appropriate.

according to Rev. Rul. 59-60, under the general umbrella of the valuation of stock in closely held corporations for purposes of both estate and gift tax. Nonetheless, the plain meaning of this particular provision leaves no doubt that it applies to transfers that are triggered upon the death of the party. "Another person may hold an option or a contract to purchase securities owned by a decedent at the time of his death." §2031-2(h). In such instances, the code continues, the effect of the contract or option price upon the valuation of the stock for "estate tax purposes" depends upon a number of factors (which are discussed in greater detail throughout plaintiff's Objections).

If the Recommendation is adopted, §2031-2(h) would be applied to an inter-vivos gift tax issue. The Recommendation rightly states that estate and gift tax regulations are to be read in *pari materia*. Nonetheless, implicit in this particular section of the Code is the fact that the option or contract restricting the price of the stock is triggered by death. By definition, such an analysis cannot apply to gift tax valuation of partnership interests transferred inter-vivos.

**CONCLUSION**

For all of the reasons discussed above, plaintiff objects to the Magistrate Judge's July 22, 2005 Report and Recommendation. Plaintiff therefore respectfully requests this Court to reject

the Recommendation that summary judgment be granted in favor of the defendant.

            Respectfully submitted,


            _____s/   W. Patrick Delaney_____
            W. Patrick Delaney
            PA23956
            Scott T. Stroupe
            PA89496
            MacDONALD, ILLIG, JONES & BRITTON LLP
            100 State Street, Suite 700
            Erie, Pennsylvania 16507-1459
            (814) 870-7658
            Fax:  (814) 454-4647
            pdelaney@mijb.com

            Attorneys for Plaitniffs


#901411