Form **843**

(Rev. January 1997)

Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ **See separate instructions.**

OMB No. 1545-0024

Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.

**Do not** use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund of fuel taxes;
- An overpayment of excise taxes reported on Form 720, 730, or 2290 (see **General Instructions**).

| Please type or print | | |
|---|---|---|
| Name of claimant<br>Sidney E. Smith, Jr. | Your social security number<br>112 ¦ 14 ¦ 2495 | |
| Address (number, street, and room or suite no.)<br>1201 Lord Road | Spouse's social security number | |
| City or town, state, and ZIP code<br>Fairview, PA  16415 | Employer identification number | |
| Name and address shown on return if different from above<br><br>N/A | Daytime telephone number<br>( 814 ) 453-6721 | |

**1** Period—prepare a separate Form 843 for each tax period
From **January 1**, 19 **98**, to **December 31**, 19 **98**

**2** Amount to be refunded or abated
$ **360,803**

**3a** Type of tax, penalty, or addition to tax:
☐ Employment   ☐ Estate   ☒ Gift   ☐ Excise (unless reported on Form 720, 730, or 2290—see instructions.)
☐ Penalty—IRC section ▶ _____

**b** Type of return filed (see instructions):
☐ 706   ☒ 709   ☐ 940   ☐ 941   ☐ 943   ☐ 945   ☐ 990-PF   ☐ 4720   ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest caused by IRS errors or delays (if applicable—see instructions).
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.

See Attached

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)

Signature

Date
December 26, 2001

**For Paperwork Reduction Act Notice, see separate instructions.**

Cat. No. 10180R

Form **843** (Rev. 1-97)

Motion In Limine
Exhibit
1

# SIDNEY E. SMITH, JR.
## SSN: 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

**Form 843 - Attachment**
**Part 5 - Explanation and Additional Claims**

The Taxpayer is filing Form 843, Claim for Refund and Request for Abatement, to correct the valuation of Taxpayer's 1998 taxable gifts of Limited Partnership Interests in the Sidney E. Smith, Jr. Family Limited Partnership. The value of these gifts was incorrectly adjusted by the Internal Revenue Service on Forms 890, 3233, and 886-A dated December 4, 2001. Forms 890, 3323, and 886-A are attached hereto as Exhibit "A". The Taxpayer is filing Form 843 to adjust the value of the taxable gifts to their actual fair market value at the time the gifts were made, which is in accordance with the requirements of Internal Revenue Code Section 2512.

The correct valuation of the gifts was previously reported on the Taxpayer's timely filed 1998 United States Gift Tax Return, Form 709, a copy of which is attached as Exhibit "B". As reflected on Form 709, the fair market value of Taxpayer's 1998 gifts amounted to $1,025,392. This is $803,206 less than the $1,828,598 value as adjusted by the Internal Revenue Service. Adjusting the valuation of the gifts to their originally reported value results in a refund due the Taxpayer in the amount of $360,803. The computation of the correct gift tax was reflected on the originally filed Form 709. A summary of the gift tax calculation and refund due the Taxpayer is as follows:

| | |
|---|---:|
| Total value of gifts in 1998 | $ 1,025,392 |
| Less: Annual Exclusions | (20,000) |
| Add: Prior Taxable Gifts | 281,801 |
| Total Taxable Gifts | $ 1,287,193 |
| | |
| Gift Tax | $ 464,293 |
| Less: Unified Credit | (202,050) |
| Less: Gift tax paid with original Gift Tax Return | (262,243) |
| Less: Gift tax paid on IRS Assessment | (360,803) |
| | |
| Refund due Taxpayer | $ 360,803 |

In support of Taxpayer's refund claim, attached are two (2) appraisals which establish the correct values of Taxpayer's 1998 gifts. Attached as Exhibit "C" is the appraisal of the Sidney E. Smith, Jr. Family Limited Partnership ("Appraisal") dated September 30, 1998 prepared by Gregory F. Pashke, CBA, CVA, CPA, of the Pashke Consulting Company. The Appraisal was included with the Taxpayer's originally filed Form 709. Attached as Exhibit "D" is the appraisal titled "Erie Navigation Company Fair Market Value Marketable, Controlling Ownership Interest in Common Stock" dated September 30, 1998 prepared by Gregory F. Pashke, CBA, CVA, CPA, of the Pashke Consulting Company.

The methods used to value Taxpayer's 1998 taxable gifts, as originally reported and as claimed herein, are consistent with the applicable provisions of IRS Revenue Ruling 59-60 and in accordance with the Internal Revenue Code Section 2512 and its corresponding Treasury Regulation (§§ 25.2512 et. seq.) which establish the procedures for valuing gifts.

Department of the Treasury - Internal Revenue Serv

Date Received by
Internal Revenue
Service

Form 890
(Rev. Oct. 1988)

**Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment -- Estate, Gift, and Generation-Skipping Transfer Tax**
(Please see the instructions on the second page of this form)

## Part 1.  Consent to Assessment and Acceptance of Overassessment

I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown below, plus any interest provided by law. I understand that by my signing this waiver, a petition to the United States Tax Court may not be made, unless additional deficiencies are determined.

Date of Death or
Period Ending        1998

| Item | Increase | Decrease |
|------|----------|----------|
| Tax | 360,803 | |
| Penalty | | |
| Total | 360,803 | |

If the estate is required to file with the Area Director of Internal Revenue evidence of payment of estate, inheritance, legacy, succession or generation-skipping transfer taxes to any State or the District of Columbia, I understand that such evidence must be filed by                  , or the credits for these taxes will not be allowed. I also agree to the assessment and collection of the increase in estate tax and penalties of                    based on the disallowed credits, plus interest figured to the 30th day after                    or until this increase is assessed, whichever is earlier.

Estate of

| | | Date |
|---|---|---|
| **Executor or Administrator** | Sign \ Here / Address | |
| **Executor or Administrator** | Sign \ Here / Address | Date |
| **Donor** | Name   . Sidney E. Smith, Jr. Address   Erie, PA | |
| **Donor's Signature** | Sign \ Here | Date   December 26, 2001 |

Form 890 (Rev. 10-88)(CG)

SSN:
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

EXHIBIT

A

Form 843

## Part 2. Unified Credit Agreement

I agree to the increase or decrease in the total allowed Unified Credit by the amount shown below.

|  | Increase | Decrease |
|---|---|---|
| Unified Credit |  |  |

| Donor | Name | Sidney E. Smith, Jr. | | |
|---|---|---|---|---|
|  | Address | Erie, PA | | |
| Donor's Signature | Sign \ Here / | | Date | |

## Part 3. Gift Tax Marital Deduction

I agree to the increase or decrease in the usage of the gift tax marital deduction by the amount shown below.

|  | Increase | Decrease |
|---|---|---|
| Marital Deduction |  |  |

| Donor | Name | Sidney E. Smith, Jr. | | |
|---|---|---|---|---|
|  | Address | Erie, PA | | |
| Donor's Signature | Sign \ Here / | | Date | |

## Instructions

### Consent to Assessment and Acceptance of Overassessment

If you consent to the assessment of the deficiencies shown in Part 1 of the form, please sign the agreement under Part 1 and return the form to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent a claim for refund from being filed (after the tax has been paid) if you later believe it is warranted, not prevent us from later determining that additional tax is owed, nor extend the time provided by law for either action.

If a claim is later filed and the Service disallows it, a suit for refund may be filed in a Federal District Court or in the United States Claims Court, but a petition may not be filed with the United States Tax Court.

We will consider this waiver a valid claim for refund or credit of any overpayment due resulting from any decrease in tax and penalties determined by the Internal Revenue Service, shown on the front of this form, provided part 1 of this form is signed and filed within the period established by law for making such a claim.

### Unified Credit Agreement

If you agree with the increase or decrease of the allowed credit shown in Part 2 of this form, please sign the agreement under Part 2 and return the form.

### Marital Deduction Agreement

If you agree with the increase or decrease in the usage of the gift tax marital deduction by the amount shown in Part 3 of this form, please sign the agreement under Part 3 and return this form.

### Signature Instructions

If the executor or administrator is a corporation, the waiver should be signed with the corporate name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign this waiver provided the action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

Form 890 (Rev. 10-88)(CG)

Form 3233
(Rev.  ) (CG)

Department of the Treasury — Internal Revenue Service

**REPORT OF GIFT TAX EXAMINATION**

| Name of Donor: Sidney E. Smith, Jr. | Social Security Number 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 | Date of Gift 1998 |
|---|---|---|
| | Shown on Return | As Corrected |
| 1. Total value of gifts of donor | 1,025,392 | 1,828,598 |
| 2. Less amount attributable to spouse | 0 | 0 |
| 3. Balance (line 1 less line 2) | 1,025,392 | 1,828,598 |
| 4. Gifts of spouse to be included | 0 | 0 |
| 5. Total Gifts (line 3 plus line 4) | 1,025,392 | 1,828,598 |
| 6. Less total annual exclusions | 20,000 | 20,000 |
| 7. Total included amount of gifts (line 5 less line 6) | 1,005,392 | 1,808,598 |
| 8. Gifts to Spouse for which a MD will be claimed | 0 | 0 |
| 9. Exclusions attributable to gifts on line 8 | 0 | 0 |
| 10. Marital deduction (line 8 less line 9) | 0 | 0 |
| 11. Charitable deduction (Net of Exclusions) | 0 | 0 |
| 12. Total Deductions (line 10 plus line 11) | 0 | 0 |
| 13. Tentative taxable (line 7 less line 12) | 1,005,392 | 1,808,598 |
| 14. Generation-skipping transfer taxes payable | 0 | 0 |
| 15. Total taxable gifts for this period (line 13 plus line 14) | 1,005,392 | 1,808,598 |
| 16. Total taxable gifts for prior periods | 281,801 | 281,801 |
| 17. Total taxable gifts (line 15 plus line 16) | 1,287,193 | 2,090,399 |
| 18. Tax computed on amount in line 17 | 464,293 | 825,096 |
| 19. Tax computed on amount in line 16 | 81,612 | 81,612 |
| 20. Total tax payable on taxable gifts (line 18 less line 19) | 382,681 | 743,484 |
| 21. Unified Credit from Table B | 202,050 | 202,050 |
| 22. Unified credit against gift tax allowable for prior periods | 81,612 | 81,612 |
| 23. Balance (line 21 less line 22) | 120,438 | 120,438 |
| 24. 20% of amount allowed as specific exemption after Sept. 8, 1976 | 0 | 0 |
| 25. Balance (line 23 less line 24) | 120,438 | 120,438 |
| 26. Unified Credit (lesser of line 20 and line 25) | 120,438 | 120,438 |
| 27. Credit for foreign gift taxes | 0 | 0 |
| 28. Total credits (line 26 plus line 27) | 120,438 | 120,438 |
| 29. Balance (line 20 less line 28) | 262,243 | 623,046 |
| 30. Generation-skipping transfer taxes | 0 | 0 |
| 31. Total tax (line 29 plus line 30) | 262,243 | 623,046 |
| 32. Tax previously assessed (from line 31) | | 262,243 |
| 33. Total Tax - Increase <decrease> (line 31 less line 32) | | 360,803 |
| 34. Penalties previously assessed | | 0 |
| 35. Penalties as corrected | | 0 |
| 36. Net Penalties - Increase <decrease> (line 35 less line 34) | | 0 |
| 37. Increase <decrease> in tax & penalties (line 31 plus line 34) | | 360,803 |

Form **3233** (Rev.    ) (CG)

| Form **886-A** | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| (Rev. April 1968)(CG) | | |

| NAME OF TAXPAYER | YEAR/PERIOD ENDED |
|---|---|
| Gift of Sidney E. Smith, Jr. | 1998 |

| | Returned | Corrected |
|---|---|---|
| **Sch. A1, Gifts of Donor w/out GST** | | |
| Two 6.865% limited partnership interests | 339,130 | 606,866 |
| Two 13.73% limited partnership interests | 678,262 | 1,213,732 |
| | ---------------- | ---------------- |
| Total of these items | 1,017,392 | 1,820,598 |
| | | 1,017,392 |
| | | ---------------- |
| Increase to schedule | | 803,206 |
| | | ================ |

The value of gifted limited partnership interests in the Sidney E. Smith, Jr. Family Limited Partnership have been increased to their fair market value. Adjusted under I.R.C. section 2512.

Form **709**

Department of the Treasury
Internal Revenue Service

**United States Gift (and Generation-Skipping Transfer) Tax Return**

(Section 6019 of the Internal Revenue Code) (For gifts made after December 31, 1997)

► **See separate instructions. For Privacy Act Notice, see the Instructions for Form 1040.**

OMB No. 1545-0020

**1998**

| 1 Donor's first name and middle initial | 2 Donor's last name | 3 Donor's social security number |
|---|---|---|
| SIDNEY E. JR. | SMITH | 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 |

| 4 Address (number, street, and apartment number) | 5 Legal residence (domicile) (county and state) |
|---|---|
| 226 SHAWNEE DRIVE | ERIE, PENNSYLVANIA |

| 6 City, state, and ZIP code | 7 Citizenship |
|---|---|
| ERIE, PENNSYLVANIA 16505 | UNITED STATES |

**Part 1 — General Information**

|  |  | Yes | No |
|---|---|---|---|
| 8 | If the donor died during the year, check here ► ☐ and enter date of death _____ |  |  |
| 9 | If you received an extension of time to file this Form 709, check here ► ☐ and attach the Form 4868, 2688, 2350, or extension letter |  |  |
| 10 | Enter the total number of separate donees listed on Schedule A — count each person only once. ►  TWO |  |  |
| 11a | Have you (the donor) previously filed a Form 709 (or 709-A) for any other year? If the answer is "No," do not complete line 11b | X |  |
| 11b | If the answer to line 11a is "Yes," has your address changed since you last filed Form 709 (or 709-A)? |  | X |
| 12 | Gifts by husband or wife to third parties. — Do you consent to have the gifts (including generation-skipping transfers) made by you and by your spouse to third parties during the calendar year considered as made one-half by each of you? (See instructions.) (If the answer is "Yes," the following information must be furnished and your spouse must sign the consent shown below. If the answer is "No," skip lines 13 - 18 and go to Schedule A.) |  |  |
| 13 | Name of consenting spouse   14 SSN |  |  |
| 15 | Were you married to one another during the entire calendar year? (see instructions) |  |  |
| 16 | If the answer to 15 is "No," check whether ☐ married ☐ divorced or ☐ widowed, and give date (see instructions) ► |  |  |
| 17 | Will a gift tax return for this calendar year be filed by your spouse? |  |  |
| 18 | **Consent of Spouse** — I consent to have the gifts (and generation-skipping transfers) made by me and by my spouse to third parties during the calendar year considered as made one-half by each of us. We are both aware of the joint and several liability for tax created by the execution of this consent. |  |  |

Consenting spouse's signature ►                                         Date ►

**Part 2 — Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Enter the amount from Schedule A, Part 3, line 15 | 1 | 1,005,392 |
| 2 | Enter the amount from Schedule B, line 3 | 2 | 281,801 |
| 3 | Total taxable gifts (add lines 1 and 2) | 3 | 1,287,193 |
| 4 | Tax computed on amount on line 3 (see Table for Computing Tax in separate instructions) | 4 | 464,293 |
| 5 | Tax computed on amount on line 2 (see Table for Computing Tax in separate instructions) | 5 | 81,612 |
| 6 | Balance (subtract line 5 from line 4) | 6 | 382,681 |
| 7 | Maximum unified credit (nonresident aliens, see instructions) | 7 | 202,050.00 |
| 8 | Enter the unified credit against tax allowable for all prior periods (from Sch. B, line 1, col. C) | 8 | 81,612 |
| 9 | Balance (subtract line 8 from line 7) | 9 | 120,438 |
| 10 | Enter 20% (.20) of the amount allowed as a specific exemption for gifts made after September 8, 1976, and before January 1, 1977 (see instructions) | 10 |  |
| 11 | Balance (subtract line 10 from line 9) | 11 | 120,438 |
| 12 | Unified credit (enter the smaller of line 6 or line 11) | 12 | 120,438 |
| 13 | Credit for foreign gift taxes (see instructions) | 13 |  |
| 14 | Total credits (add lines 12 and 13) | 14 | 120,438 |
| 15 | Balance (subtract line 14 from line 6) (do not enter less than zero) | 15 | 262,243 |
| 16 | Generation-skipping transfer taxes (from Schedule C, Part 3, col. H, Total) | 16 |  |
| 17 | Total tax (add lines 15 and 16) | 17 | 262,243 |
| 18 | Gift and generation-skipping transfer taxes prepaid with extension of time to file | 18 |  |
| 19 | if line 18 is less than line 17, enter BALANCE DUE (see instructions) | 19 | 262,243 |
| 20 | If line 18 is greater than line 17, enter AMOUNT TO BE REFUNDED | 20 |  |

*Attach check or money order here.*

Under penalties of perjury, I declare that I have examined this return, including any accompanying schedules and statements, and to the best of my knowledge and belief it is true, correct, and complete. Declaration of preparer (other than donor) is based on all information of which preparer has any knowledge.

Donor's signature ►  *Sidney E. Smith*                                    Date

Preparer's signature
(other than donor) ►                                                        Date

| Preparer's address (other than donor) ► | ROOT, SPITZNAS & SMILEY, INC. | #25-1381610 |
|---|---|---|
|  | 900 STATE STREET, SUITE ONE, ERIE, PA 16501-1450 |  |

**EXHIBIT**
**B**
Form 843

For Paperwork Reduction Act Notice, see page 8 of the separate instructions for this form.

Form **709** (1998)

ISA
STF FED1435F.1

Form 709 (1998)    SIDNEY E. SMITH, JR.    #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    Page **2**

| SCHEDULE A | Computation of Taxable Gifts |
|---|---|

**A**  Does the value of any item listed on Schedule A reflect any valuation discount? If the answer is "Yes," see instructions ............... Yes [X]  No[ ]

**B**  [ ]  ◄ Check here if you elect under section 529(c)(2)(B) to treat any transfers made this year to a qualified state tuition program as made ratably over a 5-year period beginning this year. See instructions. Attach explanation.

**Part 1 — Gifts Subject Only to Gift Tax.** *Gifts less political organization, medical, and educational exclusions — see instructions*

| A Item number | B • Donee's name and address • Relationship to donor (if any) • Description of gift • If the gift was made by means of a trust, enter trust's identifying number and attach a copy of the trust instrument • If the gift was of securities, give CUSIP number | C Donor's adjusted basis of gift | D Date of gift | E Value at date of gift |
|---|---|---|---|---|
| 1 | SEE ATTACHED SCHEDULE | | | |

Total of Part 1 (add amounts from Part 1, column E) ........................................ ► | 1,025,392

**Part 2 — Gifts That are Direct Skips and are Subject to Both Gift Tax and Generation-Skipping Transfer Tax. You must list the gifts in chronological order.** *Gifts less political organization, medical, and educational exclusions — see instructions. (Also list here direct skips that are subject only to the GST tax at this time as the result of the termination of an "estate tax inclusion period." See instructions.)*

| A Item number | B • Donee's name and address • Relationship to donor (if any) • Description of gift • If the gift was made by means of a trust, enter trust's identifying number and attach a copy of the trust instrument • If the gift was of securities, give CUSIP number | C Donor's adjusted basis of gift | D Date of gift | E Value at date of gift |
|---|---|---|---|---|
| 1 | | | | |

Total of Part 2 (add amounts from Part 2, column E) ........................................ ►

**Part 3 — Taxable Gift Reconciliation**

| | | | |
|---|---|---|---|
| 1 | Total value of gifts of donor (add totals from column E of Parts 1 and 2) ........................ | 1 | 1,025,392 |
| 2 | One-half of items _____ attributable to spouse (see instructions) | 2 | |
| 3 | Balance (subtract line 2 from line 1) ................................................. | 3 | 1,025,392 |
| 4 | Gifts of spouse to be included (from Schedule A, Part 3, line 2 of spouse's return — see instructions) .......... | 4 | |
|  | If any of the gifts included on this line are also subject to the generation-skipping transfer tax, check here ► [ ] and enter those gifts also on Schedule C, Part 1. | | |
| 5 | Total gifts (add lines 3 and 4) ..................................................... | 5 | 1,025,392 |
| 6 | Total annual exclusions for gifts listed on Schedule A (including line 4, above) (see instructions) ............... | 6 | 20,000 |
| 7 | Total included amount of gifts (subtract line 6 from line 5) ................................... | 7 | 1,005,392 |
| **Deductions (see instructions)** | | | |
| 8 | Gifts of interests to spouse for which a marital deduction will be claimed, based on items _____ of Schedule A ........... **8** | | |
| 9 | Exclusions attributable to gifts on line 8 ..................... **9** | | |
| 10 | Marital deduction — subtract line 9 from line 8 ..................... **10** | | |
| 11 | Charitable deduction, based on items _____ less exclusions . **11** | | |
| 12 | Total deductions — add lines 10 and 11 ............................................... | 12 | |
| 13 | Subtract line 12 from line 7 ....................................................... | 13 | 1,005,392 |
| 14 | Generation-skipping transfer taxes payable with this Form 709 (from Schedule C, Part 3, col. H, Total) ......... | 14 | |
| 15 | Taxable gifts (add lines 13 and 14). Enter here and on line 1 of the Tax Computation on page 1 ............... | 15 | 1,005,392 |

*(If more space is needed, attach additional sheets of same size.)*

STF FED1435F.2

Form 709 (1998)   SIDNEY E. SMITH, JR.   #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   Page **3**

| SCHEDULE A | Computation of Taxable Gifts *(continued)* |
| --- | --- |

**16  Terminable Interest (QTIP) Marital Deduction.** (See instructions for line 8 of Schedule A.)

If a trust (or other property) meets the requirements of qualified terminable interest property under section 2523(f), and

   a. The trust (or other property) is listed on Schedule A, and

   b. The value of the trust (or other property) is entered in whole or in part as a deduction on line 8, Part 3 of Schedule A,

then the donor shall be deemed to have made an election to have such trust (or other property) treated as qualified terminable interest property under section 2523(f).

   If less than the entire value of the trust (or other property) that the donor has included in Part 1 of Schedule A is entered as a deduction on line 8, the donor shall be considered to have made an election only as to a fraction of the trust (or other property). The numerator of this fraction is equal to the amount of the trust (or other property) deducted on line 10 of Part 3, Schedule A. The denominator is equal to the total value of the trust (or other property) listed in Part 1 of Schedule A.

   If you make the QTIP election (see instructions for line 8 of Schedule A), the terminable interest property involved will be included in your spouse's gross estate upon his or her death (section 2044). If your spouse disposes (by gift or otherwise) of all or part of the qualifying life income interest, he or she will be considered to have made a transfer of the entire property that is subject to the gift tax (see Transfer of Certain Life Estates on page 3 of the instructions).

**17  Election Out of QTIP Treatment of Annuities**

☐ ◄ Check here if you elect under section 2523(f)(6) **NOT** to treat as qualified terminable interest property any joint and survivor annuities that are reported on Schedule A and would otherwise be treated as qualified terminable interest property under section 2523(f). (See instructions.) Enter the item numbers (from Schedule A) for the annuities for which you are making this election ►

| SCHEDULE B | Gifts From Prior Periods |
| --- | --- |

**If you answered "Yes" on line 11a of page 1, Part 1, see the instructions for completing Schedule B. If you answered "No," skip to the Tax Computation on page 1 (or Schedule C, if applicable).**

| A<br>Calendar year or<br>calendar quarter<br>(see instructions) | B<br>Internal Revenue office<br>where prior return was filed | C<br>Amount of unified<br>credit against gift tax<br>for periods after<br>December 31, 1976 | D<br>Amount of specific<br>exemption for prior<br>periods ending before<br>January 1, 1977 | E<br>Amount of<br>taxable gifts |
| --- | --- | ---: | ---: | ---: |
| 1988 | PHILADELPHIA, PA | 6,550 | 0 | 32,500 |
| 1989 | PHILADELPHIA, PA | 19,500 | 0 | 75,000 |
| 1994 | PHILADELPHIA, PA | 13,550 | 0 | 45,000 |
| 1995 | PHILADELPHIA, PA | 4,143 | 0 | 12,948 |
| 1996 | PHILADELPHIA, PA | 4,800 | 0 | 15,000 |
| 1997 | PHILADELPHIA, PA | 33,069 | 0 | 101,353 |
| **1** Totals for prior periods (without adjustment for reduced specific exemption)......................................... **1** | | 81,612 | 0 | 281,801 |
| **2** Amount, if any, by which total specific exemption, line 1, column D, is more than $30,000 .................... **2** | | | | 0 |
| **3** Total amount of taxable gifts for prior periods (add amount, column E, line 1, and amount, if any, on line 2). (Enter here and on line 2 of the Tax Computation on page 1.) ......................................... **3** | | | | 281,801 |

*(If more space is needed, attach additional sheets of same size.)*

Form 709 (1998)   SIDNEY E. SMITH, JR.        #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                                    Page **4**

| SCHEDULE C | Computation of Generation-Skipping Transfer Tax  N/A |
|---|---|

**Note:** *Inter vivos direct skips that are completely excluded by the GST exemption must still be fully reported (including value and exemptions claimed) on Schedule C.*

**Part 1 — Generation-Skipping Transfers**

| A<br>Item No.<br>(from Schedule A,<br>Part 2, col. A) | B<br>Value<br>(from Schedule A,<br>Part 2, col. E) | C<br>Split Gifts<br>(enter ½ of col. B)<br>(see instructions) | D<br>Subtract col. C<br>from col. B | E<br>Nontaxable<br>portion of transfer | F<br>Net Transfer<br>(subtract col. E<br>from col. D) |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

| If you elected gift splitting and your spouse was required to file a separate Form 709 (see the instructions for "Split Gifts"), you must enter all of the gifts shown on Schedule A, Part 2, of your spouse's Form 709 here.<br><br>In column C, enter the item number of each gift in the order it appears in column A of your spouse's Schedule A, Part 2. We have preprinted the prefix "S–" to distinguish your spouse's item numbers from your own when you complete column A of Schedule C, Part 3.<br><br>In column D, for each gift, enter the amount reported in column C, Schedule C, Part 1, of your spouse's Form 709. | Split gifts from<br>spouse's Form 709<br>(enter item number) | Value included<br>from spouse's<br>Form 709 | Nontaxable<br>portion of transfer | Net transfer<br>(subtract col. E<br>from col. D) |
|---|---|---|---|---|
| | S– | | | |
| | S– | | | |
| | S– | | | |
| | S– | | | |
| | S– | | | |
| | S– | | | |
| | S– | | | |

**Part 2 — GST Exemption Reconciliation (Section 2631) and Section 2652(a)(3) Election**

Check box ▶ ☐ if you are making a section 2652(a)(3) (special QTIP) election (see instructions)

Enter the item numbers (from Schedule A) of the gifts for which you are making this election ▶ _____

| | | | |
|---|---|---|---|
| 1 | Maximum allowable exemption .................................................. | 1 | $1,000,000 |
| 2 | Total exemption used for periods before filing this return .......................... | 2 | |
| 3 | Exemption available for this return (subtract line 2 from line 1) ..................... | 3 | |
| 4 | Exemption claimed on this return (from Part 3, col. C total, below) ................... | 4 | |
| 5 | Exemption allocated to transfers not shown on Part 3, below. **You must attach a Notice of Allocation.** (See instructions.) ..................................................... | 5 | |
| 6 | Add lines 4 and 5 ............................................................ | 6 | |
| 7 | Exemption available for future transfers (subtract line 6 from line 3) ................ | 7 | |

**Part 3 — Tax Computation**

| A<br>Item No.<br>(from Schedule<br>C, Part 1) | B<br>Net transfer<br>(from Schedule C,<br>Part 1, col. F) | C<br>GST Exemption<br>Allocated | D<br>Divide col. C<br>by col. B | E<br>Inclusion Ratio<br>(subtract col. D<br>from 1.000) | F<br>Maximum Estate<br>Tax Rate | G<br>Applicable Rate<br>(multiply col. E<br>by col. F) | H<br>Generation-Skipping<br>Transfer Tax<br>(multiply col. B by col. G) |
|---|---|---|---|---|---|---|---|
| 1 | | | | | 55% (.55) | | |
| 2 | | | | | 55% (.55) | | |
| 3 | | | | | 55% (.55) | | |
| 4 | | | | | 55% (.55) | | |
| 5 | | | | | 55% (.55) | | |
| 6 | | | | | 55% (.55) | | |
| | | | | | 55% (.55) | | |
| | | | | | 55% (.55) | | |
| | | | | | 55% (.55) | | |

| Total exemption claimed. Enter here and on line 4, Part 2, above. May not exceed line 3, Part 2, above ................ | **Total generation-skipping transfer tax.** Enter here, on line 14 of Schedule A, Part 3, and on line 16 of the Tax Computation on page 1 ................... | |
|---|---|---|

*(If more space is needed, attach additional sheets of same size.)*

STF FED1435F.4

Sidney E. Smith, Jr.
ATTACHMENT TO FORM 709
1998

Schedule A - Part 1

| A | B | C | D | E |
|---|---|---|---|---|
| | Donee | Donor's Adjusted Basis of Gift | Date of Gift | Value at Date of Gift |
| 1. | Jill Page Smith (Daughter)<br>5336 East Grovers Avenue<br>Scottsdale, Arizona 85254<br><br>Cash | $ 7,000 | VAR - 1998 | $ 7,000 |
| 2. | 6.865% Ownership interest in the<br>Sidney E. Smith Jr. Family Limited<br>Partnership<br>(See attached valuation) | 721 | 01/05/98 | 169,565 |
| 3. | 13.73% Ownership interest in the<br>Sidney E. Smith Jr. Family Limited<br>Partnership<br>(See attached valuation) | 1,442 | 12/31/98 | 339,131 |
| 4. | Sidney E. Smith, III (Son)<br>6750 Knollwood Drive<br>Fairview, Pennsylvania 16415<br><br>Cash | 1,000 | VAR - 1998 | 1,000 |
| 5. | 6.865% Ownership interest in the<br>Sidney E. Smith Jr. Family Limited<br>Partnership<br>(See attached valuation) | 721 | 01/05/98 | 169,565 |
| 6. | 13.73% Ownership interest in the<br>Sidney E. Smith Jr. Family Limited<br>Partnership<br>(See attached valuation) | 1,442 | 12/31/98 | 339,131 |
| | | | | $1,025,392<br>========= |

# SIDNEY E. SMITH, JR. FAMILY LIMITED PARTNERSHIP

## Fair Market Value

## Nonmarketable, Minority Limited Partnership Interest

## as of December 31, 1997



( SSN: 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 )

EXHIBIT

C

Form 843

## TABLE OF CONTENTS

Page #

Introduction
- Purpose and Function of Appraisal ............................................. 1
- Definition of Value Estimated ................................................. 1
- Highest and Best Use ......................................................... 2
- Definition of Property Appraised ............................................. 2
- Effective Date of Value Estimate ............................................. 2
- Valuation Procedures ......................................................... 2
- Valuation Synthesis and Conclusion ........................................... 3
- Valuation Terms and Conditions ............................................... 3
Description of the Assignment ................................................... 4
Approaches to Estimating Value ................................................. 4
Nature and History of the Business
- Nature of Business ........................................................... 5
- History of Business .......................................................... 6
- Ownership .................................................................... 6
- Location ..................................................................... 6
Economic and Industry Outlook
- The National & Regional Economic Outlook ..................................... 6
- Industry Outlook ............................................................. 6
- Implications of Economic/Industry Outlook for Valuation Subject .............. 6
Book Value of Stock and Financial Condition of the Business .................... 7
Dividend Paying (Income Distribution) Capacity ................................. 7
Existence of Goodwill or Other Intangible Value ................................ 7
Sales of Partnership Interests and Size of Block to be Valued .................. 7
Willing Buyer and Willing Seller ............................................... 8
Articles of the Sidney E. Smith Jr. Family Limited Partnership & their Valuation Impact ... 8
Market Price of Comparable Partnerships ........................................ 12
The Valuation Process (Appraisal of Fair Market Value) ......................... 12
- Adjusted Net Assets Method ................................................... 12
- Minority Interest Discount ................................................... 13
  - Background & Theory ........................................................ 13
  - Market Evidence & Analysis to Valuation Subject ............................ 13
- Lack of Marketability Discount ............................................... 14
  - Background & Theory ........................................................ 14
  - Market Evidence ............................................................ 15
    - Restricted Stock Studies ................................................. 16
    - Pre-IPO Studies .......................................................... 17
    - Cost of "Flotation" Studies .............................................. 19
    - Tax Court Cases .......................................................... 19
  - The Quantitative Marketability Discount Model (QMDM) ....................... 19
    - The QMDM & its Application to the Valuation Subject ...................... 21
    - Marketability Discount Indicated by use of the QMDM ..................... 23
  - Concluded Marketability Discount ........................................... 24
Valuation Synthesis & Conclusion ............................................... 25

# APPENDICES

|  | Appendix |
|---|---|
| ● Relationships between Minority Interest Discounts, Control Premiums, & Discounts for Lack of Marketability | A |
| ● Closed-End Funds & "Herzfeld Averages" | B |
| ● Summary Results of Nine Restricted Stock Studies | C |
| ● The Emory Studies (1985-1995) | D |
| ● The Williamette Management Studies (1975-1993) | E |
| ● Relationships of Enterprise Level of Value & Shareholder Level of Value | F |
| ● Build-Up of Required Holding Period Rate of Return for Valuation Subject | G (1 & 2) |
| ● The QMDM Valuation of the Valuation Subject | H (1 & 2) |
| ● Principal Information Sources & References Relied Upon in this Valuation | I |
| ● Appraisal Certification | J |
| ● Appraiser's Qualifications | K(1 & 2) |
| ● Statement of Contingent and Limiting Conditions | L |

Appraisal of Sidney E. Smith, Jr. Family Limited Partnership

mandatory appraisal process.   A jointly selected appraiser shall take into account any applicable discounts based upon the minority status of such interest, the marketability of such interest, and the voting power or control of such interest.  If a jointly selected appraiser can not be determined, then a multiple appraiser process is undertaken to determine the fair market value of said interest.  The terms of the purchase price require promissory notes of up to 15 years (with the length of payment term selected by the purchaser) with interest based upon the applicable federal long-term debt rates.  The possibility that upon the death of the "willing buyer", his or her estate might have to be paid out over as long as 15 years would have a depressing effect upon the value of the limited partnership interest, when compared with a comparable *"direct"* investment in the fair market value of the underlying assets in the limited partnership.

*The prospect of a long-term pay out at a modest interest rate would tend to decrease the valuation of a limited partnership interest.*

## MARKET PRICE OF COMPARABLE PARTNERSHIPS

The assumption underlying the comparative entity approach is that prices of publicly traded similar entities provide objective evidence as to values at which investors are willing to buy and sell interests in those types of entities.

However, due to size and nature of the **Sidney E. Smith, Jr. FLP,** no comparable partnerships were found. *(The appraisal of fair market value using the Adjusted Net Assets Method considered closed-end funds and their market information to aid in the assessment of an appropriate minority discount.)*

## THE VALUATION PROCESS
## (APPRAISAL OF FAIR MARKET VALUE)

### *Adjusted Net Assets Method*

The adjusted net assets method is an asset oriented approach.  This method is used to value an entity based on the difference between the fair market value of the entity assets and its liabilities.

The net asset value of the Partnership consists of the asset value of its initial asset, namely 100% of the common stock of **Navigation ($5,200,000).** (See the attached valuation report for **Navigation**). Since the Partnership has no liabilities, the net asset value of the Partnership is also $5,200,000.  Deducting the General Partner's interest (3%) from net asset value yielded the total value attributable to the Limited Partners (97%) of **$5,044,000,** prior to appropriate discounts.

## OVERVIEW INDICATION OF VALUE
## SIDNEY E. SMITH, JR.
## FLP

|  | Total $<br>(100%) | GP's $<br>(3%) | LPs $<br>(97%) |
|---|---|---|---|
| FMV **Navigation** | 5,200,000 | 156,000 | 5,044,000 |

**Minority Interest Discount**

*Background & Theory*

The minority interest discount is designed to reflect the decreased value of an economic interest that does not convey control of a closely held entity. Considering the conceptual levels of value reflected in Appendix A, it can be seen that the minority interest discount and the control premium measure the same net differential between the controlling interest level of value and the marketable minority interest level of value.

*Market Evidence & Analysis Relative to Valuation Subject*

The control premium has been the object of study and analysis because control premiums are observable in the marketplace when public companies are sold or merged.[1] While no direct market evidence is available regarding the magnitude of minority interest discounts for operating companies, there is direct market evidence for certain asset holding companies. *(Which compares to the Sidney E. Smith, Jr. FLP which is in essence an asset holding entity.)*

Closed-end mutual funds sell a limited number of shares and invest in securities. Unlike open-end funds, closed-end funds generally do not buy their shares back from investors who wish to sell.[2] The logic (in using closed-end funds as a proxy for assessing a minority discount level) is that if the closed-end fund could be liquidated for its adjusted net asset value (NAV), then that value represents a "control value". The price (discount from NAV) at which the minority interests actually trade would be indicative of the applicable minority interest discount.

---

[1] Mercer, Christopher Z., *Quantifying Marketability Discounts,* (Memphis Tennessee: Peabody Publishing, LP, 1997), p. 24.

[2] Barron's Market Week Closed-End Funds

The **Herzfeld Closed-End Average** measures 16 equally weighted closed-end funds based in the U.S. that invest principally in American equities.[3] *(This is similar to the valuation subject whose initial asset is 100% of the stock of Navigation.)* During 1997 the Herzfeld Index which charts the *"% discount from net asset value"* (Appendix B), fluctuates between 10% - 12% during the first three quarters of year and fluctuates between 5% - 10% during the last quarter. The market tended to reduce the required discount from market value near the end of 1997 with a 5% rate indicative of conditions at that time. [4] (Barron's and the Wall Street Journal also periodically report on the relationships of trading price to NAV for closed-end funds.)

Upon review of the existing market evidence, a **5% minority discount** was felt appropriate for the valuation subject (a 1% nonmarketable minority limited partnership interest in the **Sidney E. Smith, Jr. FLP**). After application of the 5% minority interest discount, a **marketable minority interest level** of value was determined for the total value attributable to the Limited Partners (97%) of **$4,791,800**, prior to consideration of an appropriate discount for lack of marketability.

## OVERVIEW INDICATION OF VALUE
## SIDNEY E. SMITH, JR.
## FLP

|  | Total $ (100%) | GP's $ (3%) | LPs $ (97%) |
|---|---|---|---|
| FMV **Navigation** | 5,200,000 | 156,000 | 5,044,000 |
| Minority Discount **(5%)** |  |  | (252,200) |
| Marketable Minority Interest |  |  | 4,791,800 |

### Lack of Marketability Discount

*Background & Theory*

According to the IRS: "Lack of marketability is defined as the absence of a ready or existing market for the sale or purchase of the securities being valued."[5]

Shannon Pratt defines *marketability* as "the ability to convert the property to cash quickly, with minimum transaction and administrative costs in so doing, and with a high degree of certainty of realizing the expected amount of

---

[3] Barron's Market Week Closed-End Funds History.

[4] Ibid.

[5] *IRS Valuation Guide for Income, Estate and Gift Taxes* (Commerce Clearing House, Inc. 1994), p. 9-3.

# ERIE NAVIGATION COMPANY

## Fair Market Value

## Marketable, Controlling Ownership Interest in Common Stock

## as of December 31, 1997

(SSN: 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)

EXHIBIT

D

Form 843

# TABLE OF CONTENTS

Page #

Introduction
- Purpose and Function of Appraisal .................................... 1
- Definition of Value Estimated ........................................ 1
- Highest and Best Use ................................................. 2
- Definition of Property Appraised ..................................... 2
- Effective Date of Value Estimate ..................................... 2
- Valuation Procedures ................................................. 2
- Valuation Synthesis and Conclusion ................................... 3
- Valuation Terms and Conditions ....................................... 3

Description of the Assignment ............................................ 4
Approaches to Estimating Value ........................................... 4
Nature and History of the Business
- Nature of Business ................................................... 5
- History and Ownership of Business .................................... 5
- Affiliates .......................................................... 5
- Location, Facilities and Vessels ..................................... 6
- Markets and Marketing ............................................... 6
- Management and Personnel ............................................ 7
- Strengths and Weaknesses ............................................ 9

Economic and Industry Outlook
- The National Economic Review ........................................ 11
- The Regional Economic Outlook ....................................... 15
- Industry Outlook .................................................... 16
- Implications of Economic/Industry Outlook for Valuation Subject ..... 19

Book Value of Stock and Financial Condition of the Business
- Book Value .......................................................... 20
- Financial Condition of Business ..................................... 20
- Normalizing (Economic) Adjustments to Financial Statements .......... 25

Dividend Paying Capacity ................................................. 26
Existence of Goodwill or Other Intangible Value .......................... 26
Sales of Stock and Size of Block to be Valued ............................ 26
Market Price of Stock of Comparable Companies ............................ 27
Appraisal of Fair Market Value ........................................... 27
- Valuation Methods Considered and Not Used ........................... 28
  - Market Approach: Publicly Traded Comparables ..................... 28
  - Market Approach: Market Transactions ............................. 28
  - Hybrid Approach: Excess Earnings Method .......................... 28
- Valuation Methods Considered and Used ............................... 29
  - Asset Approach: Adjusted Net Assets Method ....................... 29
  - Income Approach: Developing Discount and Capitalization Rates .... 30
  - Income Approach: Capitalization of Earnings Method ............... 31

Valuation Synthesis ...................................................... 32
Premiums and Discounts ................................................... 33
Conclusion ............................................................... 34

APPENDIXES                                    <u>Appendix & Page #</u>

| | | |
|---|---|---|
| ● National Economic Review Information | A | 1-7 |
| ● Company and Shareholder Information | B | 1-3 |
| ● Company Financial Information | C | |
| ◆ Historical Financial Information (12/31/93-12/31/97) | C | 1-6 |
| ◆ Comparison to RMA SIC #5032 | C | 7-8 |
| ◆ Revenue and Gross Profit by Division | C | 9-13 |
| ◆ History of Pre-Tax Income & Margins | C | 14 |
| ◆ History of Gross Profit Margins | C | 15-16 |
| ● Normalized Income Information | D | |
| ◆ Normalized Income Worksheet (12/31/93-12/31/97) | D | 1 |
| ◆ Vessel Economic Depreciation Adjustment | D | 2 |
| ◆ Officers' Salary Adjustment and Supporting Data | D | 3-7 |
| ● IBA Market Transaction Data | E | 1 |
| ● Discount & Capitalization Rates Development | F | 1-2 |
| ● Valuation Methods | G | |
| ◆ Net Asset Value (NAV) Method | G | 1-6 |
| ◆ Capitalization of Earnings Method | G | 7 |
| ◆ Trend Line Static & Projected Future Economic Income | G | 8-10 |
| ◆ Excess Earnings Method(not used) | G | 11 |
| ● Definition of Financial and Operating Ratios | H | 1 |
| ● Principal Information Sources for Valuation | I | 1 |
| ● Appraisal Certification | J | 1 |
| ● Appraiser's Qualifications | K | 1-2 |
| ● Statement of Contingent and Limiting Conditions | L | 1 |

merely by the passage of time. As an alternative approach to estimating future economic income, a least squares trend line approach was employed. The use of a least squares trend line (Appendix G-(8/10)), derives a "best fit" line that minimizes variation but produces a downward earnings trend line that indicates normalized net income of $311,900.

The anticipated outlook for ENC is for modest revenue growth due to the nature of the mature markets in which it competes. Upon considering the past trends and current outlook a normalized net income of $351,200 (the five-year average normalized net income) was chosen to capitalize. This income level capitalized at a capitalization rate of 23.84% indicated an operating value of $1,473,200 for Erie Navigation. After recognition of $150,900 of non-operating assets, a total value indicated by this approach for common equity (100% of the issued and outstanding common shares) of Erie Navigation Company was $1,624,100 prior to any appropriate premiums or discounts.

## VALUATION SYNTHESIS

This section discusses the various valuation methods used and how those methods were weighted in arriving at an estimate of value for the controlling 100% interest of the issued and outstanding common shares of Erie Navigation Company.

A summary of the methods used and the respective indicated values for common equity (100% of the issued and outstanding common shares) of Erie Navigation Company is:

|  | 100% |
|---|---|
| **Adjusted Net Assets Method** | **$5,191,500** |
| **Capitalized Normalized Net Income** | **$1,624,100** |

It is believed that a subjective weighting (rather than a mathematical weighting) is more appropriate for estimating the total value of the issued and outstanding common shares of Erie Navigation Company. While income oriented approaches are generally preferred, the value indicated by the capitalized normalized net income method is significantly less than the value indicated by the adjusted net asset method. This suggests that ENC, while profitable, does not enjoy an economic earnings level commensurate with the employed economic assets. The adjusted net assets method gives due consideration to the fair market increase of available net assets and tends to suggest a base value for the valuation subject. Therefore we feel that after due consideration of the various valuation approaches considered and used, that the fair market value of the controlling 100% interest of the issued and

outstanding common shares of ENC was **$5,200,000** prior to the consideration of any premiums or discounts.

## PREMIUMS AND DISCOUNTS

We also considered whether any discount for lack of marketability or a control premium should be applied to the indications of value for a 100% interest of the issued and outstanding common shares of Erie Navigation Company. The question of a control premium and/or a discount for lack of marketability is discussed separately for the various methods used.

### Adjusted Net Assets Method

The adjusted net assets method normally produces an estimate of value for the entire company and which is normally a control value. Therefore no additional premium for control is warranted.

Also no additional discount for lack of marketability was deemed appropriate.

### Capitalized Income Method

The capitalized income method can be used to determine either a control value or a minority interest value depending on whether or not the expected economic benefit streams have been adjusted for control prerogatives. The normalized income streams were adjusted for such control prerogatives as owner's compensation, related party transactions, and corporate life insurance policies, and therefore no additional premium for control is warranted.

The discount and capitalization rates used for Erie Navigation were derived from actively traded minority interest transactions. The resulting value therefore has the attributes of a marketable investment. There would, typically be higher costs associated with selling Erie Navigation than with selling a marketable common stock through a stockbroker. In addition, it would take a longer period of time to sell Erie Navigation than with selling a marketable common stock of a listed company. We believe, however, that the value indicated by the capitalized income method approximates the price at which a transaction could be expected to take place, and therefore no significant marketability discount is needed.

Appraisal of Erie Navigation Company

## CONCLUSION

It is our considered opinion that the fair market value of common equity (100% of the issued and outstanding common shares) interest of Erie Navigation Company, as of December 31, 1997 is: **$5,200,000** or **$49,524 PER SHARE**

**(The indicated value for a 100% marketable controlling interest would be $49,524 PER SHARE @105 SHARES: $5,200,000).**