IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIDNEY E. SMITH III and ) <br> JILL P. SMITH, Executors of the Estate of ) <br> SIDNEY E. SMITH, JR., deceased ) <br>     Plaintiffs ) <br> ) <br>     v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br>     Defendant ) | CIVIL ACTION NO. 02-264 ERIE <br><br> ELECTRONICALLY FILED |

### PLAINTIFFS' BRIEF IN OPPOSITION
### TO DEFENDANT'S MOTION TO ALTER OR AMEND THE VERDICT

Plaintiffs Sidney E. Smith III and Jill P. Smith, Executors of the Estate of Sidney E. Smith, Jr., deceased, by and through their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Brief in Opposition to Defendant's Motion to Alter or Amend the Verdict.

### Background

This is a gift tax refund case. On September 28, 2005, the jury in the above-captioned case returned a verdict finding that the Commissioner of the Internal Revenue Service had erred in setting a value that was greater than fair market value for gifts given in 1998 by the late Sidney E. Smith, Jr. to his children. The jury also determined the actual fair market value for each of the gifts. Following this verdict, the parties conferred and stipulated that the values established by the jury resulted in a refund due Mr. Smith's estate in the amount of $648,171.68

(including interest). Based upon the parties' stipulation, this Court entered an appropriate judgment for such amount.

Defendant's present Motion seeks to alter or modify this judgment and reduce it to $439,865.19. Stated simply, the government's position is that a taxpayer may not recover at trial a tax refund greater than the amount indicated on the Form 843 Claim for Refund and Request for Abatement (hereinafter "Claim for Refund"). In support of its position, the government seeks to invoke the "Variance Doctrine" and the statute of limitations. However, the government's argument mischaracterizes the scope of the Variance Doctrine and existing precedent. Further, the government's argument improperly applies the statute of limitations.

The gifts in question were limited partnership interests in the Smith Family Limited Partnership (hereinafter "Smith FLP") and were transferred to Mr. Smith's children in the calendar year 1998. In February 1999, Mr. Smith filed a Gift Tax Return with the Internal Revenue Service and paid $262,243.00 in tax. In December of 2001, the Internal Revenue Service assessed Mr. Smith an additional $360,803.00 in tax for the gifts. On December 26, 2001, Mr. Smith paid the additional gift tax and filed his Claim for Refund.

In his Claim for Refund Mr. Smith stated, in relevant part, the following as his grounds and factual basis for refund.

> The Taxpayer is filing Form 843, Claim for Refund and Request for Abatement, to correct the valuation of taxpayer's 1998 taxable gifts of Limited Partnership Interests in the Sidney E. Smith Jr. Family Limited Partnership . . . .The Taxpayer is filing Form 843 to adjust the value of the taxable gifts to their actual fair market value at the time the gifts were made, which is in accordance with the requirements of Internal Revenue Code Section 2512 . . .
>
> In support of Taxpayer's refund claim, attached are two (2) appraisals which establish the correct values of Taxpayer's 1998 gifts. Attached as Exhibit "C" is the appraisal of the Sidney E. Smith Jr. Family Limited Partnership ("Appraisal") dated September 30, 1998

PDF created with pdfFactory trial version www.pdffactory.com

>prepared by Gregory F. Pashke . . . of the Pashke Consulting Company. The Appraisal was attached to the Taxpayer's originally filed Form 709. Attached as Exhibit "D" is the appraisal titled "Erie Navigation Company Fair Market Value, Controlling Ownership Interest in Common Stock" dated September 30, 1998 prepared by Gregory F. Pashke . . . of the Pashke Consulting Company.

The attached reports/appraisals of Mr. Pashke concerning the value of the Smith FLP and its underlying asset, Erie Navigation Company, were rich with factual information concerning the nature and operations of these entities. The information included descriptions of assets, the legal structure of each entity, the makeup of management, the competitive environment, competitors, historical financial performance (including cash flows), and business risks.

Thus, the Claim for Refund filed by the late Mr. Smith placed the Commissioner of the Internal Revenue Service on notice that a refund of tax was due on the "grounds" that there was error in determining fair market value and that the "facts" which demonstrated the error (or justified the refund) could be found in the nature and character of the gifts made.

Mr. Smith instituted this litigation when the Internal Revenue Service failed to respond to, or otherwise act upon, his Claim for Refund. In his Complaint, Mr. Smith sought recovery of the $360,803.00 of additional tax that he had paid, as well as "such other relief as the Court may deem just." In the Pretrial Narrative Statement filed on behalf of Mr. Smith's estate, Plaintiffs noted:

>In rendering his report, Mr. Pashke used a methodology known as the quantitative marketability discount model, which dictated that the "lack of marketability" discount would be approximately 76%. Mr. Pashke subjectively reduced that particular discount to 50%. It is Plaintiffs' position that the trier of fact will be justified in establishing any value that is reasonably based upon the evidence presented. Thus, Plaintiffs' recovery may be in excess of the $360,803.00 which the government has assessed over and above the amount of tax initially paid by Mr. Smith.

3

PDF created with pdfFactory trial version www.pdffactory.com

The Pashke report referred to in the above quote was the appraisal of a 1% limited partnership interest in the Smith FLP and was the same report that was attached to the late Mr. Smith's Claim for Refund. The deep discount predicted by the quantitative marketability discount model translated into a value of $15,000.00 for a 1% limited partnership interest. This information was well-known to the Defendant prior to the filing of the Pretrial Narrative, as Mr. Pashke was questioned extensively concerning the quantitative marketability discount model at his discovery deposition in February of 2005.

Prior to trial, Defendant presented the Court with a Motion in Limine arguing its current position that, because of the Variance Doctrine, Plaintiffs could not seek recovery of an amount greater than the amount noted on Mr. Smith's Claim for Refund. This Court granted that Motion, in part, holding that Plaintiffs could not argue that the value of the Smith FLP's underlying asset, Erie Navigation Company, was less than $5,200,000.00. The basis for the Court's holding in this regard was that Plaintiffs' expert, Mr. Pashke, had suggested such value, and the government's expert, Mr. Burns, had relied upon that number in preparing for trial.

At trial Plaintiffs abided by the Court's ruling, focusing on the fair market value of the limited partnership interest in the Smith FLP. While Mr. Pashke testified to his analysis of the Smith FLP and the business risks inherent its underlying asset, Erie Navigation Company, he at no time suggested a different value for Erie Navigation Company.

The jury's verdict and the resulting judgment would return to Mr. Smith's estate the entire amount of tax assessed by the Internal Revenue Service in December 2001, as well as a portion of the original gift tax paid by Mr. Smith in February 1999. As noted above, the Defendant's position that the judgment in favor of Plaintiffs must be reduced involves a misapplication of both the Variance Doctrine and the statute of limitations.

PDF created with pdfFactory trial version www.pdffactory.com

**THE VARIANCE DOCTRINE IS NOT RELEVANT TO THIS LITIGATION, WHERE ALL LEGAL GROUNDS AND FACTUAL BASES CONSIDERED BY THE DISTRICT COURT WERE EXPRESSLY OR IMPLIEDLY CONTAINED IN THE CLAIM FOR REFUND.**

Section 7422(a) of the Internal Revenue Code requires the filing of a Claim for Refund with the Commissioner of the Internal Revenue Service prior to the commencement of a lawsuit in the United States District Court for the recovery of any tax.[1]  Further, Treasury Regulations implementing the Code dictate that a Claim for Refund set forth the "grounds" upon which a refund is claimed and "facts" to support such refund.  26 C.F.R. §301.6402-2(b)(1).

From these requirements, courts have created what has come to be known as the Variance Doctrine, which expresses the limits of the District Court's jurisdiction in adjudicating a lawsuit regarding a refund of federal Internal Revenue tax.  Specifically, courts have interpreted Treasury Regulation 301.6402-2(b)(1) as prohibiting consideration of any basis for refund that was "neither specifically raised by, nor included within the general language of, a timely claim for refund."  First National Bank of Fayetteville v. United States, 727 F.2d 741, 744 (8th Cir. 1984).

The well-settled purpose of the rule is to ensure that the Claim for Refund gives the Commissioner notice of the nature of the claim and the facts upon which it is predicated, provides the Commissioner with the opportunity to correct errors, and limits ensuing litigation to those grounds which the Commissioner has considered and is willing to defend.  Union Pacific

---

[1] Lawsuits are prohibited "for the recovery of any Internal Revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established thereof."  26 U.S.C. 7422(a).

5

PDF created with pdfFactory trial version www.pdffactory.com

R.R. v. United States, 182 Ct.Cl. 103, 389 F.2d 437, 442 (D.C. Cir. 1968); Fidelity-Philadelphia Trust Company, 222 F.2d at 379, 382 (3rd Cir. 1955).

In IA 80 Group, Inc. and Subsidiaries v. United States, 347 F.3d 1067, 1074 (8th Cir, 2004), the Eighth Circuit summarized this rule succinctly, stating that the Variance Doctrine will not be triggered if the taxpayer's Claim for Refund reveals, either expressly of impliedly, the legal theory for refund. In other words, the Claim for Refund will support the District Court's jurisdiction if it sets forth the basic issues and places the Commissioner on notice of the nature of the claim. Likewise, in Lockheed Martin Corp. v. United States, 210 F.3d 1366, 1371 (Fed. Cir. 2000), the Federal Circuit Court noted the long tradition of interpreting the Internal Revenue Code and Treasury Regulations as preventing taxpayers from presenting lawsuits for refunds that "substantially vary" from the legal theories and factual bases set forth in the Claim for Refund presented to the Commissioner.

The language of Treasury Regulation 301.6402-2(b)(1) makes it abundantly clear that there are two areas of focus relative to the Variance Doctrine: (1) "grounds" for refund, and (2) "facts" supporting the refund.

Thus, in Schuylkill Haven Trust Company v. United States, 252 F. Supp. 557, (E.D. Pa. 1966), a case relied upon by the Defendant, the taxpayer was a banking institution that was required by state law to make an accounting adjustment which diminished the value of its physical assets. On the basis of this "write-down," the taxpayer filed a Claim for Refund with the Commissioner, asserting that it now had a deduction that justified an income tax refund. After litigation commenced, the taxpayer asserted that it also had discovered additional unclaimed charitable deductions for the tax year in question. Citing the Variance Doctrine, the

6

PDF created with pdfFactory trial version www.pdffactory.com

District Court granted the government summary judgment regarding the charitable contribution, stating:

> Under the above test, it is difficult to conceive how the Commissioner in the instant case could have been led to a *consideration of the facts surrounding the alleged charitable contribution* when the claims for refund covering the years 1954, 1955, and 1956 were limited to the totally unrelated subject matter of a "write-down" of the bank's building, fixtures and furniture (emphasis added).

Schuylkill Haven Trust Company, 252 F. Supp. at 562.

Likewise, in Ottawa Silica Co. v. United States, 699 F.2d 1124 (Fed. Cir. 1983), the taxpayer was engaged in the business of mining and selling silica in bulk and packaged quantities. Given its business, taxpayer enjoyed a depletion deduction against taxable income. Following an audit, the Internal Revenue Service assessed additional taxes based on the fact that the taxpayer had utilized an incorrect depletion deduction rate (15% versus 5%) on certain product that it had sold. The taxpayer paid the tax and filed a Claim for Refund, disputing only the issue of the proper depletion deduction rate. During the subsequent litigation, the taxpayer realized that it had failed to apply any depletion deduction to certain other product sales in the same timeframe and attempted to raise this new issue as a basis for refund. The Court rejected this effort as an attempt to introduce a factual basis for refund that was "at substantial variance with the issues raised in the refund claims." Ottawa Silica Co., 699 F.2d at 1138. In so holding, the Court noted that the purpose of the Variance Doctrine was

> [T]o prevent surprise and to give adequate notice to the [Internal Revenue] Service *of the nature of the claim and the specific facts upon which it is predicated*, thereby permitting an administrative investigation and determination. * * * In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been

7

PDF created with pdfFactory trial version www.pdffactory.com

> examined and which he is willing to defend (citations omitted) (emphasis added).

Ottawa Silica Co., 699 F.2d at 1138.

A similar result occurred in Lockheed Martin Corp. v. United States, 210 F.3d 1366 (Fed. Cir. 2000), where the taxpayer filed a claim for refund with the Commissioner, the basis of which was a "finite group of expenses." After rejection of the claim and the commencement of litigation, the taxpayer discovered additional expenses and sought to introduce them as an added basis for refund. The trial court rejected such attempt and the Court of Appeals agreed, holding that consideration of the newly discovered expenses would be improper as *the factual basis for refund would then substantially vary* from the original Claim for Refund.

The grounds for a refund shifted in Scott Paper Company v. United States, 943 F. Supp 489 (E.D. Pa., 1996), where the taxpayer asserted in its Claim for Refund that the Internal Revenue Service had erred in failing to properly apply a particular Revenue Ruling, resulting in a smaller refund than was due. In the subsequent litigation, the taxpayer asserted that the government should have applied Revenue Rulings different from those mentioned in the Claim for Refund. The Court refused consideration *of these new grounds*, citing the Variance Doctrine.

Real Estate-Land Title and Trust Co. v. United States, 309 U.S. 13, (1940) is another example of different grounds for refund being asserted at trial. Specifically, the taxpayer filed a Claim for Refund asserting that it should have been permitted a deduction for the obsolescence of certain tangible assets. However, in the subsequent litigation, it sought recovery on the basis of a casualty loss. The United States Supreme Court held that the taxpayer was barred from asserting such *new grounds* for refund.

8

PDF created with pdfFactory trial version www.pdffactory.com

As to the limits of the Variance Doctrine, a Court of Claims case proves to be particularly instructive, providing an example of overreach by the IRS. In Burlington Northern Inc. v. United States, 684 F.2d 866 (Ct. Cl., 1982), the taxpayer presented a claim to the Commissioner that challenged the government's disallowance of depreciation based upon anticipated obsolescence of assets. In the claim, the taxpayer provided facts that demonstrated the limited useful life of the assets. In the resulting lawsuit, the IRS sought (under the Variance Doctrine) to exclude additional specific facts raised by the taxpayer regarding the anticipated obsolescence of the actual assets. The court ruled that these facts were nothing more than "supporting facts to prove the ultimate fact of anticipated obsolescence" which constituted a "lower level of the claim not addressed or required by the regulation." Burlington Northern Inc., 684 F.2d at 870.

As demonstrated by the above cases, and from the express language of Treasury Regulation 301.6402-2(b)(1), it is clear that the Variance Doctrine is only intended to bar claims before the District Court in which the legal theory or factual basis has substantially varied from those found in the Claim for Refund.

Plaintiffs here have, from the beginning, grounded their Claim for Refund on Section 2515 of the Internal Revenue Code and Revenue Ruling 59-60 which require that the tax liability for gifts must be based upon the fair market value of the gift. This legal ground has been the sole basis in both the late Mr. Smith's Claim for Refund and in the lawsuit before this court.[2] As a result, the legal grounds of this case do not implicate the Variance Doctrine.

---

[2] As noted above, the Claim for Refund in the present case expressly stated that "The Taxpayer is filing Form 843 to adjust the value of the taxable gifts to their actual fair market value at the time the gifts were made, which is in accordance with the requirements of Internal Revenue Code Section 2512."

9

PDF created with pdfFactory trial version www.pdffactory.com

Similarly, the record is devoid of any evidence of variation in the factual basis of this claim. In accordance with the principles expressed in <u>Union Pacific Railroad</u>, the Claim for Refund placed the Commissioner on notice that the central fact at issue was whether the Commissioner had assessed a gift tax liability that was derived from the actual fair market value of the 1998 gifts. Further, by virtue of Plaintiffs' response to Part 5 of Form 843, and the attached valuation report, the Commissioner was also placed on notice that Plaintiffs' claim demanded a detailed review of key factors that impact fair market valuation of both the underlying business and a minority interest in a family limited partnership.[3] The Complaint filed with this Court pled a claim with the same factual basis. In fact, the Complaint incorporated the same valuation reports that were submitted to the Commissioner.[4]

In essence, Plaintiffs argued in the Claim for Refund that a market valuation of the 1998 gifts that was based in reality (in accordance with Revenue Ruling 59-60) would result in a refund due. This is precisely the case that the Plaintiffs brought before this Court. The legal and factual basis of both claims substantially mirrored one another. For this reason, it is not surprising that the government's Motion fails to produce even one legal theory or to state any factual basis for this claim that was not already encompassed either explicitly or impliedly in the Claim for Refund. Recall that the Variance Doctrine exists essentially to protect the government

---

[3] Such factors included the market conditions, business trends, managerial structure, and asset valuation of Erie Navigation Co., as well as an analysis of the marketability of a minority share in a family limited partnership that owned Erie Navigation.

[4] As noted above, Mr. Pashke's valuation report explicitly discussed a range of valuations that was possible under the particular model that he adopted. Mr. Pashke stated that the model indicated a discount of 70%. (Report., p. 24.)

10

PDF created with pdfFactory trial version www.pdffactory.com

from ambush in the District Court.  In this case, the broad commonality between the two claims makes the government's claim of surprise quite incredible.[5]

In fact, the present Motion is best understood as another instance where, as in <u>Burlington Northern</u>, the government is attempting to overextend the scope of the Variance Doctrine.  As stated earlier, the Variance Doctrine dictates that the District Court's jurisdiction to adjudicate a tax refund case is limited by the legal premise and the factual basis specified in Form 843.  Yet, as in <u>Burlington Northern</u>, there is an important distinction between the legal ground for the claim and the factual basis of the claim, and also between the factual basis of the claim and facts offered in support of the claim.  Here, the legal premise of the claim is that gift tax liability is derived from the fair market value of the gift.  The central factual issue in this case was whether the Commissioner actually derived the gift tax liability from a fair market valuation of a minority interest in the Smith FLP.  The factual basis for the claim is the array of market considerations that constitute a real-world valuation of such an interest.  The dollar amount claimed in the refund is neither the premise nor the substance of the claim.

The government's attempt to characterize the amount claimed in the Claim for Refund as a limitation to the jurisdiction of this Court illustrates a confusion of the factual basis of the claim with facts merely offered in support of the claim.  The validity of this conclusion is demonstrated by the simple observation that a dollar amount, by itself, would fail to communicate either the basic issue of the claim or the nature of the claim.  <u>IA 80 Group, Inc</u>, 347 F. 3d at 1074.  Such a claim would, in fact, be regarded as a claim "so vague or so general that the IRS could only guess at the precise nature of the taxpayer's claim."  See, *e.g.*, <u>Stoller v.</u>

---

[5] The specious nature of their claim of surprise is also demonstrated in the fact that the defense mounted by the government in the case before this Court was precisely one that focused upon discrediting the facts underpinning the Plaintiffs' valuation claim.

11

PDF created with pdfFactory trial version www.pdffactory.com

United States, 444 F.2d 1391, 1392 (5th Cir. 1971). The substance of the Claim for Refund is not the dollar amount claimed in refund, but the factors that are considered to derive the amount.[6]

Further, any attempt to restrict the Court's consideration of the amount due in refund runs afoul of the scope of the District Court's authority and review. The Supreme Court of the United States held that the ultimate question in an action for a refund of taxes already paid is "whether the taxpayer has overpaid his tax." Lewis v. Reynolds, 284 U.S. 281, 282, 52 S.Ct. 145, 146, (1932).[7] Therefore, the analysis required of the District Court is a "re-determination of the *entire tax liability*" (emphasis added). See also Bachner v. Commissioner of Internal Revenue, 109 T.C. 125 (1997), affirmed, 172 F.3d 859 (3d Cir. 1997), Allen v. United States of America, 51 F.3d 1012, 1014 (11th Cir. 1995). "The court does not sit in judgment of the Commissioner; rather, the court places itself in the shoes of the Commissioner." R.E. Dietz Corp. v. United States of America, 939 F. 2d 1, 4 (2nd Cir. 1991). A *de novo* review of the taxes due should be conducted. This position is reflected in F.W. Woolworth Co. v. United States, 91 F.2d 973 (2nd Cir. 1937) where the court awarded a refund higher than that claimed before the Commissioner.[8]

---

[6] It also must be noted that the valuation report submitted by Plaintiffs with both Form 843 and the Complaint indicates that a marketability discount of 70% (rather than the 50% ultimately opined) was supported by the valuation methodology used by Mr. Pashke. (Report, p. 24.) Such variability demonstrates that it is the market factors considered and assumptions made, rather than a specific dollar amount, that ultimately forms the substance of the claim.

[7] As more recently noted by the Supreme Court, 28 U.S.C. 1346(a)(1), which authorizes claims for refund, mirrors the common law remedy of *indebitatus assumpsit*. United States v. Williams, 514 U.S. at 527, 532, 115 S.Ct. 1611. (1995).

[8] Significantly, this understanding of the proper scope of the federal district court's deliberation in considering refund claims has been consistently embraced by the government in its defense against plaintiffs who seek refunds. See, *e.g.* Pacific Gas and Electric Company v. United States, 417 F.3d 1375, 1379 (Fed. Cir. 2005); Americold Corporation v. United States, 28 Fed. Cl. 747, 750-1 (1993). The court describes the nature of the action as one that seeks to discover the "amount *which might have been properly assessed and demanded*" (emphasis in original). Allen 51 F.3d at 1014, quoting in part Lewis, 284 U.S. at 283. The Sixth Circuit elaborated on this point, noting that a refund claim is distinct from a "deficiency re-determination." Estate of Mueller v. C.I.R. 153 F.3d 302, 304 (C.A.6,1998) The Sixth Circuit went on to say that a refund suit is an "action brought to recover a tax erroneously paid, [which,] although an action at law, is equitable in its function." Accordingly, the taxpayer's entire tax liability is brought under scrutiny.

PDF created with pdfFactory trial version www.pdffactory.com

The government cites four District Court cases in support of its proposition that the court may not award more than that sought in a Claim for Refund. Wiegand Fertilizer Equipment, Inc. v. United States, 1973 U.S. Dist. LEXIS 15077, at 5 (S.D. Ill, 1973). Austin Nat'l Bank v. Scofield, 84 F. Supp. 483, 486 (W.D. Tex. 1948); Stutzman v. United States, 72 F. Supp. 879, 882 (N.D. Ind. 1947); Sir Francis Drake Hotel Co. v. United States, 75 F. Supp. 668 (N.D. Cal. 1947). The weakness of all these decisions is evidenced in the fact that none of those cases cite authority for the position. There is good reason for this. Indeed, all of these decisions directly contradict controlling law expressed by the Supreme Court, as discussed above. As a result, defendant's Motion to Alter or Amend the Verdict must be denied.

**THE DISTRICT COURT ADJUDICATED A TIMELY-FILED REFUND CLAIM AND ULTIMATELY ESTABLISHED PLAINTIFFS' ACTUAL 1998 GIFT TAX LIABILITY; THEREFORE, THE VERDICT RESULTING IN A REFUND OF $648,171.68 MUST STAND UNALTERED.**

The government argues that the statute of limitations precludes refunding the Plaintiffs any amount exceeding that mentioned in the timely refund claim. Yet, the statute imposes no such limit to the Court's jurisdiction.

The Internal Revenue Code states that no refund shall be permitted for claims filed after three years from the time the return was filed. 26 U.S.C. §6511(b)(1); 26 U.S.C. §6511(a). The Code further specifies that for such timely-filed refund claims, the amount of the refund shall not exceed the portion of the taxes paid within that three-year period. 26 U.S.C. §6511(b)(2)(A).

In the present case, the late Mr. Smith filed his 1998 gift tax return (Form 709) on February 12, 1999. (Exhibit A of Complaint.) He paid gift tax in the amount of $262,243.00 at

13

PDF created with pdfFactory trial version www.pdffactory.com

that time. On December 4, 2001, the government notified Mr. Smith of an alleged deficiency. (Exhibits B, C, and D of Complaint.) On December 26, 2001, two years and ten months after paying the original gift tax, Mr. Smith paid the erroneous deficiency and at the same time filed a Claim for Refund. (Exhibit E of Complaint.) Therefore, the entire tax liability (original and deficiency) had been paid within the three-year period prior to the filing of the "claim" as specified in §6511(b)(2)(A). As a result, §6511(b)(2) does not pose a bar to any portion of the refund reflected in the judgment entered by the District Court.

The government argues that the amount refunded may not exceed the amount stated in the Claim for Refund, arguing that the three-year statute bars post-claim adjustments of the refund. In essence, they argue that filing the Claim for Refund does not toll the statute, such that any adjustments to the claim at any time after the three-year period has run are precluded. The government does not cite any authority for this argument.[9]

To the contrary, the Supreme Court stated that a timely-filed Claim for Refund (in compliance with §6511(b)(2)) "generally ensures that the taxpayer can obtain a refund of *any taxes* against which the IRS is asserting a deficiency" (emphasis added). Commissioner of Internal Revenue v. Lundy, 116 S. Ct. 647, 652, 516 U.S. 235, 244 (1996). In light of the plain language of the Code, as well as the holdings in Lundy and Lewis, the only reasonable conclusion is that a timely-filed Claim for Refund ultimately preserves the jurisdiction of the District Court to review the taxpayer's entire tax liability, establish the actual tax liability, and refund any overpayment, whatever amount that might be.

---

[9] The government does cite a 1935 Court of Claims decision. Dixie Margarine Co. V. United States, 12 F. Supp. 543, 544 (Ct. Cl. 1935). This case, however, states that the statute of limitations to file refund claims cannot be extended. The Claim for Refund in this case was timely filed.

14

PDF created with pdfFactory trial version www.pdffactory.com

## IV. CONCLUSION

For the reasons set forth above, this Honorable Court must deny the government's Motion to Alter or Amend the Verdict and find in favor of the Plaintiff.

Respectfully submitted,

s/W. Patrick Delaney
W. Patrick Delaney
Pa Bar I.D. 23956
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7658
E-mail: pdelaney@mijb.com

Attorneys for Plaintiffs
  Sidney E. Smith III and Jill P. Smith, Executors of
  the Estate of Sidney E. Smith, Jr., Deceased

919188

PDF created with pdfFactory trial version www.pdffactory.com