**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SIDNEY E. SMITH, III, et al.,            )
                                         )
        Plaintiffs,               )
                                         )
        v.                        )   Civil Action No. 02-264 Erie
                                         )
UNITED STATES OF AMERICA,                )
                                         )
                                         )
        Defendants.               )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J.

    Presently pending before the Court are the following post-trial motions filed by the Defendant, United States of America: Motion for a New Trial (Dkt. #99), and Motion to Alter or Amend the Judgment (Dkt. #97).

## I. Background

    This case involves a gift tax refund, the amount of which the government and the Plaintiffs disputed. The gifts in question were fractional interests in the Smith Family Limited Partnership ("Smith FLP"), formed by the late Sydney E. Smith, Jr. ("Smith") and the Plaintiffs, Sydney E. Smith III ("Smith III") and Jill P. Smith (collectively, "Plaintiffs"), on December 29, 1997. The sole asset of the Smith FLP was 100% of the common stock of an operating company known as Erie Navigation Company, Inc. ("ENC"), which, until then, had been owned by Mr. Smith.

    When it was formed, the Smith FLP had two general partners: Mr. Smith, who owned a 2% general partner interest, and Plaintiff Sidney E. Smith, III, who owned a 1% general partner interest. In addition, Mr. Smith owned a 95.15 % limited partner interest, while Plaintiff Sidney E. Smith, III, owned a 0.90 % limited partner interest, and Plaintiff Jill P. Smith owned a 0.95 % limited partner interest.

    On January 5, 1998, Mr. Smith gave each Plaintiff a 6.865 % limited partner interest in the Smith FLP, and on December 31, 1998, each Plaintiff received an additional gift of a 13.37 % limited partner interest in the Smith FLP. On or about February 1999, Mr. Smith filed a Form 709, 1998 United States Gift Tax Return, on which he reported that the total value of the limited partner

interests he gifted to the Plaintiffs in 1998 was $ 1,025,392.00. (See Complaint at ¶ 7 and Exhibit A). Based on this value, Mr. Smith paid gift tax in the amount of $ 262,243.00. (See Complaint at ¶ 5).

On or about December 4, 2001, Defendant issued Mr. Smith an Assessment in which it increased the total value of the gifts reported on Mr. Smith's 1998 Gift Tax Return to $1,828,598.00. (See Complaint at ¶ 7 and Exhibits C and D). As a result, Mr. Smith was assessed additional gift tax totaling $360,803.00, which he paid to the Internal Revenue Service on or about December 26, 2001. (See Complaint at ¶ 7 and Exhibits B and C). With his payment of the additional gift tax, Mr. Smith filed a Form 843, Claim for Refund and Request for Abatement, claiming that he was wrongfully assessed and requesting a refund of the additional gift tax. (See Complaint at ¶ 11 and Exhibit E). After six months passed without receiving a response to his refund request from Defendant, Mr. Smith filed the instant refund suit pursuant to 26 U.S.C. § 6532. (See Complaint at ¶ 12).

On September 28, 2005, following a jury trial, the jury returned a verdict finding that the Commissioner of the Internal Revenue Service had erred in setting a value that was greater than fair market value for gifts given in 1998 by the late Sydney E. Smith, Jr. to his children. The jury also determined the actual fair market value for each of the gifts. Following the verdict, the parties conferred and stipulated that the values established by the jury resulted in a refund due Mr. Smith's estate in the amount of $648,171.68, including interest.

In Defendant's motion for a new trial, it contends that this court erred in allowing Sydney E. Smith, III to offer a lay opinion at trial as to the value of a 1% limited partnership interest in the Smith FLP. Defendant's motion to alter or amend the judgment argues that the jury award in this case should be amended so as not to exceed the amount demanded by Plaintiffs before the Commissioner of the Internal Revenue Service and in the Complaint filed with this Court. For the reasons stated below, each of these motions is denied.

## II. DISCUSSION

**A.    Motion for New Trial**

Rule 59(a) of the Federal Rules of Civil Procedure allows a party to seek relief from a judgment by filing a motion for a new trial. Grounds upon which a new trial may be granted include:

1) that the verdict is against the weight of the evidence, 2) that the damages are excessive, or 3) that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury.  See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). Generally, the decision whether or not to grant a new trial is "committed to the sound discretion of the district court."  Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 812 (3rd Cir. 1984).

Here, the government argues that this Court erred by admitting the lay opinion testimony of Sidney E. Smith, III, a general and limited partner in the Smith FLP, as to the value of a 1% limited partnership interest in the limited partnership.  The admission of lay opinion testimony is governed by Fed. R. Evid. 701:

> Rule 701.  Opinion Testimony by Lay Witnesses
>
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Prior to trial, the United States objected to the admission of Smith III's proposed testimony as to the value of a 1% limited partnership interest, contending that it would have to be based on specialized knowledge and that Smith III had not been qualified as an expert witness.  In overruling the objection, we relied upon Robinson v. Watts Detective Agency, 685 F.2d 729 (1st Cir. 1982), as well as the Third Circuit's decision in Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3rd Cir. 1993):

> Here's the bottom line.  This is Robinson v. Watts Detective Agency, 685 F.2d 729 (1st Cir. 1982).  And the court says: "An owner of a business is competent to give his opinion as to the value of his property."  Citing cases.  Whether [or] not his opinion is accurate goes to the weight of the testimony and not its admissibility.  Just as an aside, that principle as to the owner's ability to testify is under 701.
> \*      \*      \*      \*      \*      \*      \*      \*
> Let the record reflect that the Advisory Committee Notes 2002 Amendments provide in part, for example, "most courts have permitted the owner or officer of a business to testify as to the value of projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert."  Citing Lightning Lube, Inc. v. Witco, Third Circuit case.

(Transcript, In Chambers Proceeding, September 26, 2005, pp. 10-11).

In Lightning Lube, the Third Circuit affirmed a trial court's decision to allow the owner of a business to provide testimony as to the company's lost profits, as such testimony was based on his knowledge and participation in the day-to-day affairs of the business. As noted above, when passing the 2000 amendments to Rule 701, the drafting committee specifically cited Lightning Lube with approval. Moreover, the committee explained that:

> [s]uch opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

Federal R. Evid 701, 28 U.S.C.A. Advisory Committee Notes, 2000 Amendments.

The government argues that Lifewise Master Funding v. Telebank, 374 F.3d 917, 929-30 (10th Cir. 2004), stands for the proposition that only an expert could properly testify as to the matters addressed by Smith III. We do not agree that Lifewise is supportive of the government's position. In that case, the Court precluded the testimony of a company president as to lost profits *only* because the witness attempted to rely upon a complicated damages model in offering his opinion. The Court observed that the witness "could have testified solely as a businessperson based on his personal knowledge and his experience as president of the company. He could have given a straightforward opinion as to the lost profits using conventional methods based on Lifewise's actual operating history." Id. at 930. Here, as discussed more fully below, Smith III's opinions were based on personal knowledge of and experience with the operations of his company. See also Asplundh Manuf. Div. v. Benton Harbor, 57 F.3d 1190, 1201 (3rd Cir. 1995) (emphasizing that lay opinion testimony on matters of a technical nature must derive from the rational perceptions of the witness, but allowing that such perceptions could be based upon either specialized knowledge *or* experience).

In the alternative, the government contends that Smith III's testimony should have been excluded because "the plaintiffs in this case did not establish the foundational predicates set forth in Lightning Lube [and] the Court erred in relying on that case to permit the lay opinion testimony of Smith III." (Memorandum in Support of Motion for a New Trial, Dkt. #100, p. 3).

Contrary to the government's contention, a careful review of the record reveals that a

4

sufficient foundation was laid to establish Smith III's "particularized knowledge" concerning his role as vice-president of Erie Navigation, his knowledge as to each of the ships and other assets of the company in detail, including value, workload, income stream, and operations, as well as his involvement in the company's finances. He described the competitors of Erie Navigation Company and the impact these competitors had on the shipping operations of Erie Navigation, and the existence of several asbestos lawsuits pending against the Company. Finally, Smith III testified extensively as to his understanding of the Smith FLP and the meaning of fair market value in terms of a limited partnership interest:

> Q:  Do you understand that fair market value talks about a hypothetical buyer and a hypothetical seller?
>
> A:  Yes.
>
> Q:  And it's not Smith family members, do you understand that?
>
> A:  Correct.
>
> Q:  And do you understand that the fair market value involves or is the price at which a hypothetical buyer and seller would transact business - - neither being required to buy or sell and both having full knowledge of the transaction events and even alternative investments they could make, do you understand that?
>
> A:  Yes, I do.
>
> Q:  Do you have an opinion about the fair market value of what one percent of the Family Limited Partnership would be, the Smith Family Limited Partnership would be, which owned Erie Navigation Company as of January 5th and December 31, 1998?
>
>     Mr. Cooper:  Objection, lack of foundation.
>
>     The Court:  Lay a little foundation.
>
> Q:  Were you an owner of a limited partnership interest in 1998?
>
> A:  Yes, I was.
>
> Q:  Do you remember how much your father had gifted to you in January of 1998?
>
> A:  Yes.

Q: What percentage, if you can recall?

A: I think it was five or six percent.

Q: Do you know what amount he gifted to you in December of 1998?

A: It was 10 or 12 percent, maybe more.

Q: Now, had you been involved continuously in the business of the underlying assett of Erie Navigation Company between 1985 and 1998?

A: Yes, I had.

Q: Today are you familiar with the terms that are contained generally in the Family Limited Partnership Agreement?

A: Yes, I am.

Q: Now, I would ask whether you have such an opinion?

    Mr. Cooper: Objection, foundation.

    The Court: I apologize, I didn't hear the objection, what was the basis for the foundational objection?

    Mr. Cooper: How does he arrive at a discount?

    The Court: Well, that's not a foundational objection, he's about to tell you, overruled. Go ahead.

Q: Sandy, what is your opinion about the fair market value of a one percent of the Family Limited Partnership in 1998?

A: Well, I think it was - - I don't know, somewhere between, I don't know, $10,000 to $12,000 per share. I could make a case for one share. I could make a case for $7,000, I could make a case for 15. But in the middle I'd say $10,000 to $12,000. Just do some simple mathematics and say okay, it was $5.2 million and there's how many shareholders, that's where I ended up. And we had significant bank debt.

Q: Okay. Did you take into consideration in forming your opinion what dividends the limited partnership would have received from the underlying company?

A: They were pretty nonexistent. We paid dividends up from Erie Navigation to the partnership to basically pay Mr.

>    Pashke, Mr Finnecy and MacDonald, Illig. There were no distributions that came from the partnerships.
>
> Q: Did you take into consideration in forming your opinion the management of the company, the management of Erie Navigation Company?
>
> A: Yeah, my dad was in charge and that's all the further it was going. If we had a dispute, it was too bad if he didn't agree with you.
>
> Q: And did you take into consideration the net asset value and cash flows of Erie Navigation Company?
>
> A: Yeah, I mean, we had a couple of tough years.

(Transcript, Day 2, pp. 98-100).

Whether or not Smith III's conclusions were accurate goes to the weight of his testimony, not the admissibility. See Robinson, 685 F.2d. at 739 ("Whether or not [a business owner's] opinion is accurate goes to the weight of the testimony, not its admissibility."). Indeed, we instructed the jury as to this precise point at the conclusion of trial:

> You will also recall that Mr. Sandy Smith testified on the nature of the shipping business and its operations, and the fair market value of a limited partnership interest in the Smith Family Limited Partnership. Mr. Smith is not an expert. However, as is the case here, the Federal Rules of Evidence do permit a witness who is an owner or officer of an entity to give an opinion on the value of that entity, as long as it is based on his own day to day participation and knowledge of its affairs. If you find that Mr. Smith's testimony is based on his personal knowledge and such testimony is helpful to you in understanding the subject upon which he testified, you may consider such testimony in determining the facts relating to this witness' testimony.

(Transcript, Day 3, pp. 58-59).

**B.    Motion to Alter or Amend Judgment**

The government's motion to alter or amend judgment asserts that Plaintiffs are not entitled to receive a refund award from the jury in an amount greater than that claimed in the proceedings before the Internal Revenue Service. In December, 2001, after the IRS had assessed an additional $360,803.00 in estate and gift taxes on Smith's 1998 estate and gift tax return, Plaintiffs paid the

7

disputed amount and submitted a claim for refund in the same amount. The government's motion requests that the amount awarded by the jury, $648,171.68, be reduced to the amount claimed in the IRS refund claim, a total of $439,865.19, including interest.

The government relies upon the Variance Doctrine to support its assertion that a court may not award a greater amount at trial than sought in the claim for refund. The judicially created Variance Doctrine derives from Treasury Regulation 301.6402-2(b)(1) and prohibits judicial consideration of any basis for refund that was "neither specifically raised by, nor included within the general language of, a timely claim for refund." First National Bank of Fayetteville v. United States, 727 F.2d 741, 744 (8th Cir. 1984). The purpose of the rule is to give the IRS Commissioner notice of the nature of the claim and the facts upon which it was predicated, providing the Commissioner with an opportunity to correct errors, and limiting ensuing litigation to those grounds which the Commissioner is willing to defend. See, e.g., Union Pacific R.R. v. United States, 389 F.2d 437, 442 (D.C. Cir. 1968).

The record in this case reveals that the government's primary concern was that Plaintiffs not be permitted to offer a value for Erie Navigation Company that was inconsistent with the $5.2 million value used by plaintiff's expert in the report presented to the Commissioner. Moreover, the government contended at trial that Plaintiffs should not be permitted to utilize a method of calculation different from that advanced before the Commissioner. It conceded, however, that the issue of the extent of the marketability and control discounts was properly a subject of argument before the jury:

> The Court: Let me ask you a question about [valuation]. We're talking now really about, broadly speaking, marketability discounts?
> Mr. Delaney: And a control discount.
> The Court: And a control discount. There are percentages attributed to both?
> Mr. Delaney: That's what experts do, yes.
> The Court: Is it your contention that what they argued before the Commissioner on that point appears to be inconsistent with what they might try to do in the trial here?
> Mr. Dale: No.
> The Court: Is it really your concern that they may try to wiggle on

|   |   |
|---|---|
| | the value of the underlying assets, which is $5.2 million? |
| Mr. Dale: | Correct. We took them at their word. |

\*     \*   \*   \*   \*   \*   \*   \*   \*\*

|   |   |
|---|---|
| The Court: | Hang on a second. Now, isn't this really what's going on here. Your expert is going to testify consistent with his expert report. If he didn't, I would preclude it because it would be surprise to the government. He says $5.2 million in his report. And $5.2, he said it then, he's going to say it now. Your point is somewhat more of a nuanced point, isn't it, that this doesn't have anything to do with your coming forward with a new theory, either a new theory or new monetary value, it has everything to do with the evidentiary principle that the jury can accept or reject the testimony of an expert? |
| Mr. Delaney: | That's right. |
| The Court: | It's the government's position that the jury is bound, you already heard his expert is going to testify consistently with what he did before the Commissioner, how can the jury possibly be bound by that figure given the charge I give on all experts all the time? |
| Mr. Dale: | I'm not saying that they're bound by the figure, but I'm saying on one hand that you have two experts, both stating that this $5.2 million figure and assuming going into the case the claim for refund they state is $5.2 million, the value of this asset. And the only issue is these discounts. And we disputed the discounts. So when you go to the jury, you can't come back and find some other figure that would be unsupported by the evidence, and I suppose that if you wanted to argue if our expert came in and testified as to another value, he said it was $3.8 or he said it was $6.5, at that point in time there would be two opinions and the jury could choose or they could split the difference or they - - |
| The Court: | You're saying by all events if the evidence comes in the way you think it will and the way he indicates his expert is going to testify, there would be no basis for the jury to come in with a figure lower than $5.2? |
| Mr. Dale: | Correct. Unless he wants to argue something. |

\*     \*   \*   \*   \*   \*   \*   \*

|   |   |
|---|---|
| Mr. Dale: | . . . There's a distinction between the Smith Family Limited Partnership and the asset, Erie Navigation Company. On the marketability discount of the Smith Family Limited Partnership or the financial status of the Smith Family Limited Partnership, you are free to argue whatever you wish. |
| Mr. Delaney: | I'm free to argue whatever the evidence is. |

\*     \*   \*   \*   \*   \*   \*   \*

|   |   |
|---|---|
| Mr. Dale: | Just to finish my point briefly. Is that there's a |

|              |                                                                                                                                                                                                                                                                                                                      |
|--------------|------------------|
|              | distinction between the Smith Family Limited Partnership and Erie Navigation. If he wants to argue his claim for refund was predicated that the Smith Family Limited Partnership were subject to these discounts, then he's free to do so. I think what he's talking about with Pashke – |
| The Court:   | If you come up with different discount percentages, as I would fully expect, you can argue that till the cows come home, that's not what we're talking about here. |
| Mr. Dale:    | We're talking about Erie Navigation Company, he wants to talk about the financial condition of Erie Navigation as to upturn his statement in the claim for refund, that the Erie Navigation Company was worth $5.2 million. That's the whole distinction. |

(Transcript, Day 1, pp. 4-8).

During a conference in chambers on the first day of trial, the Court issued the following ruling on the government's motion in limine based on the Variance Doctrine:

> For present purposes you need some direction as to the other issue, as to whether Mr. Smith can come in and testify to valuation based upon a different method. I've looked at the cases, I've concluded he cannot. Let me put this on the record as to why. For instance, I'm looking at <u>Hempt Brothers, Inc., v. United States</u>, 354 F.Supp. 1172. Broadly speaking, this case involved a change in the accounting method, that produced an error in an inventory calculation. It appeared that corporate entity had made and then abandoned a particular approach. And the court said, and this is apropos to the question of variance or waiver, "the Commissioner is required to examine only those points to which his attention is necessarily directed, and this is essentially apposite here because the corporation's amended claim sets forth specific reasons in support of its inventory argument the natural effect of which is to induce the Commissioner to pursue quite a different line of inquiry than is relevant to the theory upon which the plaintiff seeks to rely. Similarly, it is immaterial [that] the facts which might support recovery pursuant to the tax-benefit theory were before the Commissioner when he reviewed the corporation's claim. The mere availability of information is not equivalent to notice that a specific claim based thereon is being made because the Internal Revenue Service cannot be expected to discover every claim which a taxpayer might conceivably assert." Citing cases.

(Transcript, Day 1, pp. 71-72). We went on to observe, quoting <u>Scott Paper v. United States</u>, 943 F.Supp. 489 (E.D. Pa. 1996), that "the purpose of this rule is to facilitate an administrative determination of claims and [the] limitation of issues which the Commissioner has considered and

10

prepared to defend."[1] (Id. at 72).

In the above-quoted order, we adopted the interpretation espoused in Hempt and Scott Paper v. United States, 943 F.Supp. 489 (E.D. Pa. 1996), to wit, that the primary function of the Variance

---

[1]  At trial, Smith III, pursuant to this Court's order, expressed no opinion on the value of Erie Navigation Company on *direct* examination. On cross-examination, however, the government "opened the door" by virtue of the following exchange:

> Q: [D]id your expert, Mr. Pashke, use the net asset value for the valuation of this FLP?
> A: I believe he did.
> Q: After reviewing the financials, he came to the determination that the value of the ENC stock as of December, 1997 was $5.2 million, correct?
> A: Yes, I believe he did.
>
> \*   \*   \*   \*   \*   \*
>
> Q: Now, Mr. Smith, I believe when you testified earlier, you also stated that the net asset value of ENC stock was worth $5.2 million?
> A: That's what Mr. Pashke's calculations yielded, right.
> Q: I'm asking you, I mean when you testified, did you agree that the net asset value of the ENC stock was worth $5.2 million?
> A: If you're asking my opinion as to the value of it in 1998, would I have paid $5 million for that, no.
> Q: Well, I'm asking whether or not you agree that the net asset value on December 31, 1997 was $5.2 million?
> A: In Mr. Pashke's report he said $5.2 million. But if you're asking me – I guess I don't know what you're asking. His report he said $5.2 million. If you're asking me what would you pay for it, I'm not going to pay you $5.2 million for it.
> Q: So you're contending that the net asset is not $5.2 million?
> A: Yeah, I'm saying it's not $5.2 million, not in my mind.
> Q: So the net asset value is something less in your mind?
> A: Yes.
>
> Mr. Cooper:  Your honor, I'd like to strike the witness - -
> The Court:  You opened the door.

(Transcript, Day 2, pp. 108-09).

Doctrine is to apprise the Commissioner of the salient issues raised in a claim for relief in anticipation of litigation. Applying this principle to the instant claim, we find no basis to alter or amend the judgment. At trial, Plaintiffs did not deviate from or vary the claims raised before the Commission. Rather, Plaintiffs carefully complied with our order barring any testimony about valuation methods other than those used in the reports submitted before the Commissioner. That the jury's ultimate finding as to the fair market value of the gifts at issue, determined on the basis of the same valuation theories utilized before the Commission, resulted in an award larger than that claimed, does not implicate the Variance Doctrine. Thus, we reject the government's contention that there was a violation of the Variance Doctrine in this case.

Finally, the government argues that an amount greater than that requested in the claim for refund is not recoverable on the basis of the running of the Internal Revenue Code statute of limitations. 26 U.S.C. § 6511 provides that a claim for refund must be filed within three years after the return is due, or two years after the tax in dispute was paid, whichever is latest. Although the claim for refund was timely filed, the government asserts that, because Plaintiffs did not claim entitlement to an amount in excess of $360,803.00 prior to trial, and because three years have now passed since the claim for refund was submitted, the excess amount constitutes an additional claim in violation of the limitations period.

In the present case, the late Mr. Smith filed his 1998 gift tax return on February 12, 1999. He paid gift tax in the amount of $262,243.00 at that time. On December 4, 2001, the government notified Mr. Smith of an alleged deficiency. On December 26, 2001, two years and ten months after paying the original gift tax, Mr. Smith paid the erroneous deficiency simultaneously filed a claim for refund. Therefore, the entire tax liability (original and deficiency) had been paid within the three-year period prior to the filing of the "claim" as specified in the relevant statute. As a result, the statute of limitations does not pose a bar to any portion of the refund reflected in the judgment entered after trial.

The government offers no support for its theory that an award in excess of the amount

claimed before the Commissioner constitutes an independent "claim" that is barred by the applicable statute of limitations. Indeed, in an analogous context, we note that a party is always free to amend a claim for damages as long as the underlying legal claim remains the same without running afoul of the statute of limitations. See, e.g., Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3rd Cir. 1984) (noting that leave to amend should be freely granted where the amendment will not unduly prejudice the opposing party); Gunnip v. Warner Co., 43 F.R.D. 365 (E.D.Pa. 1968) (allowing plaintiff to amend the complaint to add a claim for punitive damages after the expiration of the statutory limitations period because the amendment relied upon the same facts and claims set forth in the original complaint). Thus, we conclude that the statute of limitations is not a bar to Plaintiffs recovery in this instance.

### IV. CONCLUSION

An appropriate Order follows.

| | | |
|---|---|---|
| SIDNEY E. SMITH, III, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 02-264 Erie |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendants. | ) | |

## **ORDER**

AND NOW, this 13th day of July, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for New Trial and Defendant's Motion to Alter or Amend Judgement are DENIED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___