IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


SIDNEY E. SMITH, III, et al.,
      Plaintiffs

     v.            CIVIL ACTION NO. 02-264 ERIE

UNITED STATES OF AMERICA,
      Defendant



HEARING ON POST-TRIAL MOTIONS



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, December 20, 2005.




APPEARANCES:
      W. PATRICK DELANEY, Esquire, appearing on behalf
      of the Plaintiffs.

      IVAN C. DALE, Esquire, Tax Division, U.S.

Department of Justice, appearing on behalf of
the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1           P R O C E E D I N G S

2

3      (Whereupon, the proceedings began at 1:25 p.m., on

4   Tuesday, December 20, 2005, in Courtroom C.)

5

6           THE COURT:  All right, we have a couple of things.

7   We have defendant's motion for new trial, and defendant's

8   motion to alter or amend the judgment.  Why don't we start with

9   the motion for new trial.

10          MR. DALE:  Okay.  If it please the court, Rule 701

11   in its present form and the form it was in at the time of the

12   trial of this case, states "if the witness is not testifying as

13   an expert, the witness' testimony in the form of opinions or

14  inferences is limited to those opinions or inferences which are

15  (a) rationally based on the perception of the witness, and (b)

16  helpful to a clear understanding of the witness' testimony or

17  the determination of a fact issue, and (c) not based on

18  scientific, technical or other specialized knowledge within the

19  scope of Rule 702."

20        THE COURT:  All right.

21        MR. DALE:  It's clear from Rule 701 that all of

22  those three items are prerequisites to the admission of lay

23  opinion testimony.

24        THE COURT:  Let me ask you this, Mr. Dale, I think I

25  already know the answer to it.  But would it be primarily your

3

1  objection that -- let me make two observations.  One, that

2  merely being an owner isn't enough in and of itself, mere

3  ownership doesn't necessarily entitle you to testify on

4  valuation issues, correct?

5        MR. DALE:  I would absolutely concur with that.

6        THE COURT:  All right.  And, secondly, do I take it

7  that it would be your position that what -- that the something

8   plus that you need is ownership plus a requisite foundation?

9        MR. DALE:  Correct, your Honor.

10       THE COURT:  All right.  In this case there isn't a

11   dispute as to ownership, the core of your dispute is that a

12   sufficient foundation wasn't laid so as to have appropriately

13   permitted Mr. Smith to opine on valuation, is that correct?

14       MR. DALE:  Correct, your Honor.

15       THE COURT:  Tell me about that?

16       MR. DALE:  That was our contention at the conference

17   in chambers prior to his testimony, and our objection at trial

18   when he did opine.  And we do contend that that foundation was

19   not laid.  One need look no further than the jury instruction,

20   which I believe is cited in plaintiffs' opposition brief.  And

21   that jury instruction says "that if you find that Mr. Smith's

22   testimony is based on his personal" --

23       THE COURT:  Just a tad slower for the court

24   reporter.  Start that again, please.

25       MR. DALE:  I'm sorry.  The jury instruction states

4

1   that "if you find that Mr. Smith's testimony is based on his

2   personal knowledge and such testimony is helpful to you in

3   understanding the subject upon which he testified, you may

4   consider such testimony."  But why would the jury need to make

5   those determinations.  Those determinations are in the province

6   of the judge, who must find by a preponderance of the evidence

7   under Rule 104, prior to the admission of testimony.  Not a

8   determination to be made by the jury after the admission of the

9   testimony during deliberations.  And that is the nature of the

10  error that occurred at this trial.

11       THE COURT:  Well, I disagree with you in this sense.

12  And I have a completely open mind on this point.  I thought

13  your objection didn't run to my charge, that's the first time

14  I'm hearing that.  I thought your objection ran to the fact,

15  essentially, Mr. Smith was completely unversed, if you will, in

16  the "science," if you will, of valuation.  Unlike, for

17  instance, Mr. Pashke and some other experts.  And by virtue

18  of -- I'm paraphrasing your argument, by virtue of that lack of

19  expertise in those requisite areas, he could have been an owner

20  till the cows come home and still couldn't have weighed in on

21  the issue?

22       MR. DALE:  That's correct.  And perhaps I should

23  clarify why I brought up the jury instruction.

24        THE COURT:  Sure.

25        MR. DALE:  My contention is not that the jury

5

1  instruction was improper.  My contention is that the jury

2  instruction is a reminder of what occurred at the trial, which

3  was we do not have in the record the requisite foundation for

4  these elements.  And I believe, and I certainly could be wrong

5  on this, but after that occurred, in an effort to prevent that

6  error, that this jury instruction, which was drafted and

7  submitted to the court after Mr. Smith's testimony, was an

8  effort to rectify that error.  Having not satisfied these

9  elements on the record, it was an effort to say, well, if the

10  jury finds these things.  I think that was the purpose of the

11  jury instruction.  I don't object to the jury instruction.

12        THE COURT:  Okay.  In other words, the point being

13  the jury instruction, as I gave it apropos to Mr. Smith, should

14  never have been given at all because I should never have

15  permitted him to testify on the point?

16        MR. DALE:  Correct.  It should have been clear by

17  the time Mr. Smith testified that by a preponderance of the

18  evidence, Mr. Smith's testimony was rationally, his opinion as

19  to the value, was rationally based on his perception.  Was

20  helpful and was not based on technical acknowledge.  Each of

21  those three things should have been clear on the record.

22      THE COURT:  Do you have with you, did you receive a

23  copy from our court reporter of Mr. Smith's testimony?

24      MR. DALE:  I believe that Mr. Smith's testimony, the

25  court reporter did prepare that, and he did Federal Express it

6

1  to me.  Which was to arrive on Monday, was to be Federal

2  Expressed to me today for review and I don't have it with me.

3      THE COURT:  All right.  Well, it is what it is, and

4  it's of no particular moment.  But if you will recall, there

5  was a series of questions on direct examination by Mr. Delaney.

6  Did you consider this, did you consider that, did you consider

7  this.  To which he generally answered yes.  And then he

8  expressed his opinion on valuation.  There was a rather

9  vigorous cross-examination then, where I don't know if you did

10  it or your co-counsel did it, but, in any event, the upshot of

11  which was essentially to weigh in on Mr. Smith and create the

12  impression that you really aren't equipped to opine on this.

13  What additional buttons had to be pushed by Mr. Delaney, other

14  than those which were pushed, to create what in your view would

15  be a necessary and requisite foundation?

16       MR. DALE:  Well, we don't believe that he could have

17  pushed those buttons for the following reasons.

18       THE COURT:  Go ahead.

19       MR. DALE:  The first goes to scientific and

20  technical knowledge.  We had Mr. Pashke opine on the stand as

21  to the value of a one-percent interest.  And we went through,

22  prior to his submission as an expert and after his submission

23  as an expert, what kinds of criteria are necessary to make that

24  kind of determination.  What we have here is a company with an

25  asset that is worth $5.2 million.  In this case it so happens

7

1  that asset was a stock certificate.  But it could have been

2  some other asset worth $5.2 million.  The issue was was that a

3  one-percent interest in the holding company was not marketable.

4  There was no ready market for that kind of an interest.

5  Therefore, there was nothing in the marketplace in fact that

6  you could perceive.  There weren't offers to buy the

7  one-percent interest.  There weren't other one-percent

8  interests out there that you could look at and see.  So what it

9  took was essentially an economic or financial analysis.  It

10  required that the expert look in the marketplace, in the public

11  offerings marketplace or in restricted stock studies or in

12  other criteria using formula, Mr. Pashke used a particular

13  formula or chart to arrive at his conclusion.  All of these

14  things are essentially by analogy.  I mean you can argue

15  whether or not economics or financial analysis is a science,

16  but it's certainly quite technical.  And that's how that you

17  derive, you derive by analogy, what is something worth when

18  there's nobody to buy it.

19        THE COURT:  Would this be accurate to say.  That you

20  are in a sense carving out a limited exception to the general

21  proposition under 701 and under the Lightning_Lube case law, as

22  a general proposition, ownership plus personal experience

23  (foundation), entitles you to testify to valuation issues.

24  It's your position that ownership plus personal valuation in a

25  limited situation does not because, in your view, tell me if I

1   have this right, ownership plus personal involvement doesn't

2   necessarily trump the need for expert testimony in a certain

3   unlimited area, is that right?

4        MR. DALE:  Well, I think that there are -- I

5   recognize that there is binding authority for it under the

6   Third Circuit with regard to circumstances under which an owner

7   may testify as to value.

8        THE COURT:  Right.

9        MR. DALE:  And in each of those cases, the court

10  exercised its function as the gatekeeper to insure that the

11  opinion testimony was rationally based on the perception of the

12  witness.  And then insofar as they exist after 2000, would

13  certainly insure that it wasn't the kind of technical or

14  specialized knowledge that would require --

15       THE COURT:  What you're saying, I think this is

16  right, it's a rather esoteric point, but I think I have it.

17  That, in your view, Mr. Delaney could have laid a foundation

18  all day long and even if he laid a sufficient foundation, he

19  still could not have turned Mr. Smith into an expert with

20  sufficient knowledge to opine on that issue, is that correct?

21          MR. DALE:  Based on my knowledge of the case, I

22  believe that to be true.

23          THE COURT:  All right.

24          MR. DALE:  To put it another way.  I think that Mr.

25  Smith or I could testify as the owner of -- or as the value of


                                9


1  my house, or a stock certificate.  I know what I paid for it, I

2  know what people have offered me for it.  If I'm a CPA, for

3  example, for a corporation, I've got access to the company's

4  books, I know what kind of profits they're making.  I can tell

5  you what the likely profits are in the future.  I think those

6  are the kind of cases in the Third Circuit where they say,

7  look, by virtue of his position, he can testify as to the

8  value.  But Mr. Smith didn't know as of the valuation date that

9  he was an owner.

10          THE COURT:  Well, I don't think the fact that

11  someone knows they're an owner necessarily makes them any

12  smarter on the ultimate issue.  I don't think it's an issue as

13  to whether he was or wasn't, he was.  I think the main battle

14  ground is your other point.  Isn't it true that the factors

15  that he brought to bear in reaching his conclusion were kind of

16  quintessential factors that an owner would always know, whether

17  they owned a shipping company or whether they owned a ring.

18  He knew, for instance, the nature and scope of the ownership.

19  The type of, the nature of his father's rather integral

20  involvement.  He knew about the increasing competition up there

21  by virtue of the dredging that was going on.  He knew other

22  things that would inform on price, some of which

23  parenthetically the banks didn't know, including pending

24  liabilities.  And, loosely speaking, in his direct testimony

25  one could say accurately, that all these factors were thrown

10

1  into a big hopper and shook around and he spit out whatever he

2  spit out.  What additional factors, what would you -- I know

3  you would want him to have been qualified as an expert in order

4  to have testified.  But only for purposes of my question, tell

5  me what other factors should he have been personally aware of,

6  if you will, that would have perhaps got him closer, in your

7  view, to the quintessential owner, personal involved owner who

8  could weigh in on the issue?

9        MR. DALE:  First of all, he should have been aware

10  of the existence of the entity entitled Smith Family Limited

11  Partnership as of the valuation date.  The testimony is that he

12  was not aware of the existence of those entities.  Smith Family

13  Limited Partnership is not a shipping company.  It does not

14  operate dredging vessels on Lake Erie.  It does not do any of

15  the things that Mr. Delaney elicited on the stand.  It owns a

16  piece of paper, and that piece of paper is a $5.2 million stock

17  certificate.  It could be changed theoretically into $5.2

18  million worth of Baskin Robins.  And from the entity

19  standpoint, it shouldn't matter.  And so at that point, and the

20  unrebutted testimony on the stand from Mr. Pashke and Mr.

21  Burns, unrebutted testimony is, is where you have a holding

22  company with a $5.2 million asset, that it's a different

23  criteria, it's not a matter of looking in the books.

24        THE COURT:  Doesn't -- I haven't really thought this

25  through, if memory serves me at trial, doesn't our discussion


11


1  get a little muddied by the fact that possibly muddied by the

2  fact, since you bring up the $5.2 million valuation, concerning

3  which I think I made a pretrial ruling, that Delaney and

4  company could not weigh in on that in an attempt to change it.

5  But if I remember correctly, wasn't there valuation testimony

6  on that issue elicited from Mr. Smith on cross-examination by

7  the government?

8        MR. DALE:  Once Mr. Smith -- and this is part of the

9  reason why the admission of the testimony is more than harmless

10  error.

11        THE COURT:  All right.

12        MR. DALE:  Once Mr. Smith was permitted to testify

13  without a record of the foundational elements, the government

14  was required to -- had no other choice at that point, but to

15  inquire as to what were the foundational elements.  And at that

16  point in time it was discovered that Mr. Smith's testimony was

17  essentially based on the fact that he contended that the $5.2

18  million was too high.  And because we couldn't separate the two

19  at that point in time --

20        THE COURT:  In essence, because of the evidentiary

21  ruling, you had no choice but to plow ahead and ask the

22  question, in essence?

23        MR. DALE:  That would be our position.

24        THE COURT:  Okay.

25        MR. DALE:  The cat was out of the bag at that point


12


1  in time.

2        THE COURT:  But the one-percent valuation cat was

3  out of the barn and down the road, but not a word had been

4  spoken by Mr. Smith about the $5.2 million issue until the

5  question was asked, isn't that right, not a word?

6        MR. DALE:  Correct.

7        THE COURT:  So that cat, you let the cat out of that

8  barn, didn't you -- whether Mr. Smith agreed or disagreed with

9  Mr. Pashke's $5.2 million valuation?

10        MR. DALE:  Yes, we asked him that question.  We

11  asked do you agree or disagree.  Because we were seeking to

12  establish that his opinion testimony was the only way it was

13  rationally based on anything, was it rationally based on his

14  experience as a principal in Erie Navigation Company.  All of

15  these other items, the asbestos litigation, the problems that

16  they had on Lake Erie, those all relate to Erie Navigation

17  Company.  Once you establish that it's $5.2 million, the value

18  of Erie Navigation Company, then the process by which you

19  arrive at the value of a one-percent interest in the holding

20  company, in Erie Navigation Company, is a financial analysis.

21  There is no contrary evidence on that point.

22      THE COURT:  Could we shift gears then as long as

23  you're up there.

24      MR. DALE:  Sure.

25      THE COURT:  Let's chat briefly about your motion to


13


1  alter or amend the judgment.  And this gets us into the

2  Variance Doctrine?

3      MR. DALE:  The motion to alter or amend judgment is

4  based on the notion that a claim was submitted for X amount of

5  dollars.  Had we at that point in time granted that claim for

6  refund --

7      THE COURT:  There would be no court jurisdiction.

8      MR. DALE:  Furthermore, the statute of limitations

9  on claims for refund state that you can't recover unless a

10  claim therefore has been filed.  And when we say a claim

11  therefore, we're referring to a claim for a refund of taxes.

12        THE COURT:  Address the plaintiffs' position, which

13   is really this, when you cut through all the gobbledygook here,

14   they say that the only thing that is required in order to

15   comply with the dictates of the Variance Doctrine is that the

16   claim -- is that the IRS be informed as to the nature of the

17   claim and the facts upon which it is predicated.  In other

18   words, the flip side of that being that the specific dollar

19   amount doesn't serve as a premise for substance of the claim.

20   What's your position on that?

21        MR. DALE:  I can't see how a taxpayer could submit a

22   claim for refund stating that we object to the determination on

23   the following grounds, and not request an amount to be

24   refunded.

25        THE COURT:  Almost always happens, there is no


                              14


1   question about that.  What you're saying is the taxpayer who

2   fails to get it "right", if you will, in terms of the dollar

3   value, does so at his, her or its own risk, in terms of the

4   Variance Doctrine?

5        MR. DALE:  I think that is true.  I think when the

6    taxpayer puts down a dollar amount, that proceeding for some

7    other dollar amount at trial, number one, is not something the

8    government is prepared to defend at trial.  I mean a refund

9    suit is a review of the administrative record and to determine

10   whether the Commissioner's determination to deny that refund

11   was incorrect.  So the court's jurisdiction is to say,

12   Commissioner, you incorrectly denied that refund, grant it.

13        THE COURT:  But posit a situation, if you will,

14   where a specific dollar amount was requested.  The claim was

15   denied.  Litigation ensues.  And during the course of discovery

16   it becomes the plaintiff, through its experts, while not

17   abandoning the underlying theory, where you're filing an 843

18   claim as always, we paid more than we should have paid.

19   Without abandoning the underlying theory, refines it by its

20   expert.  The expert comes in and says you know my initial

21   calculation was a little bit too high, should have been a

22   little bit lower, if you will.  And the case is now proceeding

23   before the district court in the discovery phase.  The

24   government, the IRS presumably gears up and addresses that

25   issue in discovery.  Does that then have to go all the way back

15

1    again so that a new dollar value can land at the administrative

2    agency, if you will, before it can get kicked back; do you

3    follow me?

4         MR. DALE:  I think so, your Honor.  I think the

5    nature of your Honor's question --

6         THE COURT:  What happens if the dollar value that is

7    pressed before the Commissioner during the course of discovery

8    changes, the expert says, you know, either I made a mistake or

9    I've considered additional factors.  The underlying theory is

10   the same, this is why we paid too much, but you really owe us

11   back more than I thought.  What happens in a case like that,

12   what do you do think should happen?

13        MR. DALE:  If that occurs within the statutory

14   period for claiming a refund, then you can amend the claim for

15   refund for that additional amount.

16        THE COURT:  In other words, if the statute hasn't

17   run, the case just keeps going on and the Commissioner, through

18   counsel, then just considers that as an amendment, if you will,

19   of the damage claim and just pushes ahead, is that right?

20        MR. DALE:  Well, I don't know if -- I think it would

21   have to be presented to the agency.  I'm not an attorney for

22   the IRS and I don't purport to speak on behalf of chief counsel

23   for the IRS.

24        THE COURT:  I understand, I'm not asking you to do

25   that.  It's getting me to your statute of limitations argument,


                              16


1   explain that to me; in other words, you said even if -- well,

2   you say it's too late now, assuming you have to do it, your

3   position is they had to present a different claim.  You say

4   it's too late to go back and do it now, is that right?

5        MR. DALE:  Yes.  I'm saying that because for the

6   additional amount, a claim therefore has not been filed with

7   the Commissioner in any respect to the pertinent time period.

8        THE COURT:  How about this, and I think this came up

9   in our discussion a little bit pretrial.  Assume you have a

10   taxpayer who -- this taxpayer, let's assume they asserted the

11   same overpayment at trial that they asserted before the

12   Commissioner, as they were exhausting their administrative

13   remedies, if you will.  Whatever the merits of your position

14   may be as to the Variance Doctrine, as a practical matter once

15   you get to a jury, isn't it within the province of the jury to

16   decide on a figure that may be higher or lower than a figure

17   that was ever pressed before the Commissioner, which is an end

18   run around the Variance Doctrine, at least your theory of it,

19   isn't it?

20         MR. DALE:  Well, the jury, in its capacity as the

21   finder of fact, if it finds as a matter of fact that the value

22   is Y, which it's only requested to find, and write down what

23   you think the value is, then it has found that fact.

24         THE COURT:  So the jury isn't bound by it.  This is

25   how it gets a little bit like how many angels can you fit on


17


1   the head of a pin.  While the claimant, by your theory, may not

2   be able to come in and actively argue for a different dollar

3   amount, the jury is free to award a different dollar amount?

4         MR. DALE:  I think the award and the finding of fact

5   is different.

6         THE COURT:  All right.

7         MR. DALE:  They are free to find as a matter of fact

8   that the value of something is worth this.  Or whatever facts

9   which, if true, and had been submitted with the original return

10   would have resulted in a refund of a certain amount.  But in

11   terms of the court, whether it's the jury or the judge, its

12   jurisdiction to compel payment of a refund, the judge and the

13   jury are limited to what was presented to the Commissioner in

14   the form of a claim for refund.  I mean, to put it another way,

15   if Mr. Smith or his estate had submitted a claim for refund for

16   $100,000, and then the Commissioner cannot, within the bounds

17   of his authority, turn around and cut a check for $300,000.

18   That would be an abrogation of his duty as Commissioner.

19          THE COURT:  Wouldn't he be the Commissioner very

20   long.

21          MR. DALE:  No.

22          THE COURT:  Thank you, I have your point.  Anything

23   else you want to tell me?

24          MR. DALE:  I believe that there's something that was

25   unsettling about the trial to me.  This is back with regard to


18


1   the opinion testimony.  I think that, and again I could be

2   wrong, but I believe that everyone who was present in the

3   courtroom certainly finds it plausible that when Mr. Smith was

4   on the stand, that the number he arrived at could have been

5   picked out of thin air.  I'm not saying it was, I'm not saying

6   it wasn't.  I'm saying it's plausible that it could have been.

7   And if it could have been, then that means that the court has

8   not fulfilled its responsibility as gatekeeper, insuring that

9   the conclusion flows obviously and rationally from the

10  experience or knowledge that the person giving the opinion

11  testimony had.

12          THE COURT:  All right, thank you, Mr. Dale, I

13  appreciate your argument.

14          MR. DALE:  Thank you, your Honor.

15          MR. DELANEY:  Judge, is there any order that you'd

16  like me to start?

17          THE COURT:  Yes, I want to start with Mr. Smith.

18  What did Mr. Smith know about -- let me put it this way.  And

19  I'm going to use the term "expertise" within the meaning of

20  owner personal involvement because I see them as somewhat

21  equatable.  What personal involvement or personal experience,

22  apropos to his ownership of the company, did your client have

23  such that he was capable of weighing in on some of those rather

24  esoteric issues that Mr. Pashke weighed in on?

25          MR. DELANEY:  Well, let's start with the upper layer

19

1   and go down.  First of all, remember this is a valuation of a

2   one-percent interest, limited partnership interest in a family

3   limited partnership.  Mr. Smith was fully aware of all the

4   terms and conditions of that family limited partnership by the

5   time he testified.

6          I believe the testimony was by the time of the

7   second gift in December of 1998, he was aware of those terms

8   and conditions and the nature of that agreement.  He was aware

9   of who the other partners were.  He was aware of the

10   limitations of control and marketability.  He was aware that

11   his father was the controlling general partner.  He was aware

12   of every aspect of ownership.  He was aware of the fact that no

13   distributions had been made to the family limited partnership,

14   except on a very, very small basis.  Just to pay for, I

15   believe, costs of organization of the family limited

16   partnership.  So he had a full and complete awareness of what

17   the terms and conditions of ownership were.  I believe that he

18   also testified at trial that he knew, although not a lawyer, he

19   understood what the limitations were of a limited partner under

20   Pennsylvania law.

21        Then going deeper, he understood what the singular

22   asset, the sole asset of the family limited partnership was.

23   That would be a hundred percent of the Erie Navigation Company.

24   He testified also that he had been an employee of the Erie

25   Navigation Company since 1988, through 1999 and even beyond


20


1   that.  He testified to his intimate knowledge with regard to

2   the operations of that company.  To the assets, the physical

3   assets of that company.  The customer base of that company.

4   The competition of that company.

5        THE COURT:  Speak to Mr. Dale's point, though.

6   Mr. Dale says that, in essence, the evidentiary ruling created

7   a Hobson's choice for them, in terms of pursuing that line of

8   cross-examination relative to the $5.2 million asset.  Their

9   suspicion being all along that Mr. Smith's real motive for his

10   opinion as to value had to have been driven by a fundamental

11   disagreement with the expert as to what the value of Erie

12   Navigation was.  If they couldn't ask the question, what were

13  they supposed to do?

14      MR. DELANEY:  They should have asked that question.

15      THE COURT:  Well, they did.

16      MR. DELANEY:  No, they didn't, your Honor,

17  respectfully.  What they asked was do you agree with Mr. Pashke

18  that the net asset value of Erie Navigation Company is $5.2

19  million.  They should have asked him, Mr. Smith, I'd like you

20  to describe for us the foundation for your opinion about the

21  value of a one-percent limited partnership interest.  He likely

22  would never have mentioned his opinion about the net asset

23  value of Erie Navigation Company.  He would have talked about

24  the risks, he would have talked about the limitations of

25  ownership as a limited partner, the lack of control and the


21


1  like.  But they wade right in, leading with their chin, if you

2  will, and asked about $5.2 million.  He did have an opinion

3  about that.  He expressed it, and sort of chaos erupted in the

4  courtroom.  Now, had they said to him at some point, and he was

5  never asked this, is this your disagreement with Mr. Pashke on

6  the $5.2 million net asset value.  Is that the foundation for

7  your opinion about the value of a one-percent interest in the

8  Smith Family Limited Partnership.  That question was never

9  asked.  So they never made a connection or never demonstrated

10  that that disagreement, that difference of opinion that Mr.

11  Smith had with Mr. Pashke was the foundation of his opinion

12  about the value of a limited partnership interest.

13      THE COURT:  Is ownership plus foundation, under the

14  Lightning_Lube line of cases always -- let me see how can I say

15  this.  Does ownership plus foundation, even in the most

16  sophisticated valuation issues involving someone's property,

17  ever require the additional factor of expertise within the

18  meaning of Rule 702, or is ownership plus requisite foundation

19  the functional equivalent of expertise; do you understand my

20  question?

21      MR. DELANEY:  I think that expertise is something

22  that isn't required.  The substitute for expertise is the

23  assumed intimate knowledge that the owner has based on the

24  experience.  I can imagine a situation where --

25      THE COURT:  Is it presumed that ownership plus

22

1  foundation in a sophisticated area that would otherwise require

2  expert testimony, supplies the same indicia of reliability that

3  an expert supplies in another area where you don't have an

4  owner; do you understand my question?

5      MR. DELANEY:  I believe I do.  And I would say yes.

6  I don't mean to exclude the possibility in this age of obscure

7  technology and patents of living things, that one could be an

8  owner and not truly understand.  But then one would be an owner

9  and not have the requisite foundation.  So my answer is yes.

10  If you're an owner and you have the requisite foundation, there

11  is no need for expertise.

12      THE COURT:  Well, isn't ownership, this is more

13  philosophical than we need to get.  But isn't ownership a

14  requirement only because if you're not an owner, you would

15  never be in a position to have any foundation about a company,

16  as a practical matter?

17      MR. DELANEY:  I could imagine that if you were a CFO

18  or a CEO that had no ownership interest --

19      THE COURT:  Or lack of sufficient interest in how

20  the business was doing?

21      MR. DELANEY:  But once you are an owner and you have

22   the requisite familiarity with the business, then I believe

23   that the case law suggests you've got what it takes to express

24   an opinion.

25        THE COURT:  Now, why is it fair for your client to

23

1   go off before the IRS Commissioner and bang the drum for a

2   certain dollar refund, certain amount of refund, and then come

3   in here and bang a different drum that beats a different beat?

4        MR. DELANEY:  Well, I don't think it is --

5        THE COURT:  In terms of value?

6        MR. DELANEY:  I don't think it is a different drum

7   that is being beat.  Judge, the case law makes clear that the

8   issue of the Variance Doctrine is that the Commissioner needs

9   to understand the theory of the refund and the basis for the

10   refund.  If you alter that in some substantial way, then the

11   Commissioner is at a disadvantage.  But there hasn't been an

12   opportunity.

13        THE COURT:  But in many cases, though, the theory of

14   the refund will inexorably lead you to a dollar value, won't

15   it?

16            MR. DELANEY:  Well, I haven't read those cases.

17  Well, I suppose it would.  If the theory completely changes,

18  then you might get a different dollar value.  Now, for example,

19  if you decide that you're proceeding under a different revenue

20  ruling than you suggested in your refund claim, that would

21  violate the Variance Doctrine.  If you're suggesting that it's

22  a different transaction that gives rise to your refund,

23  different from what's in the claim, the claim document that you

24  filed, that will trigger the Variance Doctrine.  But simply the

25  monetary amount, filling in one line on the monetary amount, is


                              24


1  neither the theory or the basis that needs to be addressed by

2  the Commissioner at that stage, at that administrative stage.

3            Let's assume that we put a number that was $50,000

4  higher, but everything else was the same.  Would the

5  Commissioner have acted differently, would their analysis have

6  been different.  The line item that talks about a number is

7  neither theory or substance, so let me take that to an absurd

8  level.

9            Let's assume we file a claim for refund that says

10    nothing but a number.  Can the Commissioner act, is that fair

11    to the Commissioner.  No, obviously, there has to be something

12    more.  That's the theory and substance for the recovery that

13    the Commissioner needs to know in order to act at that

14    administrative level.

15          Likewise, let's take the government's argument to

16    the absurd level at this point.  If the taxpayer indicates a

17    number on a claim for refund, and the jury comes in with a

18    number that's $10,000 less.  Does the Variance Doctrine, even

19    though it benefits the government, does the Variance Doctrine

20    prevent a refund of that amount.  Does the taxpayer lose

21    because they picked the wrong number.  That makes no sense.

22    And we've cited a whole series of cases in our brief, judge,

23    that talk about the nature and the scope of the Variance

24    Doctrine, it's underlying purpose and rationale.  It doesn't

25    fit here.  It doesn't fit here.


25


1          And we said this in the brief, in the claim for

2    refund, we said the mistake here is that the Commissioner has

3    failed to consider the actual fair market value of this asset.

4   And that's why we are proceeding.  And then we attached, not

5   one, but two appraisals.  The appraisal of the family limited

6   partnership and the appraisal of the underlying asset, that

7   laid out all of the circumstances that were considered by the

8   jury in making this decision.

9        THE COURT:  All right, thank you.  Let me ask both

10   of you just a couple questions.  You can sit down, Mr. Delaney.

11        THE COURT:  Mr. Bench recently filed various

12   transcripts here.  Does either side, in light of the

13   transcripts and the in-chambers transcripts that we have, feel

14   the need or have a desire to file anything supplemental, or are

15   you just willing to rely on what I have and let me draw my own

16   conclusions; Mr. Dale?

17        MR. DALE:  I think the transcript will speak for

18   itself.

19        THE COURT:  It does, but I wanted to give everyone

20   the opportunity.  Did you have something?

21        MR. DELANEY:  We're fine with what you have in front

22   of you, judge.

23        THE COURT:  All right.  Let's go off the record.

24        (Discussion held off the record.)

25        (Whereupon, at 2:11 p.m., the proceedings were

26

1   concluded.)

2

3               - - -

4

5

6           C E R T I F I C A T E

7

8

9       I, Ronald J. Bench, certify that the foregoing is a

10   correct transcript from the record of proceedings in the

11   above-entitled matter.

12

13

14

15

16   _____

17   Ronald J. Bench

18

19

20

21

22

23

24

25